SIXTH DIVISION
SEPTEMBER 21, 2007

No. 1-07-1078

| | | |
|---|---|---|
| In re TYRESE J., a Minor | ) | Appeal from the |
| | ) | Circuit Court |
| Respondent-Appellant, | ) | of Cook County. |
| | ) | |
| (The People of the State of | ) | |
| Illinois | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 06 JA 823 |
| | ) | |
| Melissa A. and Tyrone J., | ) | The Honorable |
| | ) | Richard Stevens, |
| Respondents-Appellees) | ) | Judge Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Following a petition by the State for adjudication of wardship wherein it alleged abuse and neglect, the circuit court of Cook County entered an order for temporary custody of Tyrese J., a minor (Tyrese). An adjudicatory hearing was subsequently held and the circuit court found that Tyrese was not neglected, abused or dependent pursuant to sections 2-3 and 2-4 of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/1-1 et seq. (West 2006)). The State and Tyrese appeal the judgment of the circuit court contending that its finding was against the manifest weight of the evidence and that the circuit court erred in not allowing the State to amend its pleading. For the reasons that follow, we reverse the judgment of the circuit court and

remand this matter to the circuit court for further proceedings.

BACKGROUND

On December 5, 2004, Tyrese was born to Melissa A. at Mount Sinai Hospital in Chicago, Illinois. Both Melissa and Tyrese tested positive for opiates. Melissa named Tyrone J. as Tyrese's father. The Illinois Department of Children and Family Services (the Department) opened an "intact family" case file in an effort to avoid removing Tyrese from his mother's custody. Melissa was offered drug treatment services and support, which Melissa accepted; however, it is not clear from the record whether Melissa successfully completed her addiction treatment prior to the closure of her case.

On November 4, 2006, Melissa gave birth to Teeron J. He and Melissa both tested positive for cocaine on the day of his birth. The Department was notified and took protective custody of Teeron and Tyrese following an investigation.[1] The Department placed Tyrese with his paternal grandmother, who lived in the unit next door to Tyrone. Teeron was to be placed with his paternal grandmother upon release from the hospital.

The State subsequently filed a petition for adjudication of wardship for Tyrese on November 14, 2006, alleging that he was a neglected minor whose environment was injurious to his welfare

---

[1]Teeron is not a party to this appeal.

pursuant to sections 2-3(1)(b) and 2-3(2)(ii) of the Act. Tyrese's petition did not allege that he was born exposed to narcotics under section 2-3(1)(c) of the Act; however, it did allege that he tested positive for a controlled substance at birth.

The State's petition reads, in pertinent part, as follows:

"1.  Tyrese J. is a male born on December 5, 2004 and who resides or may be found in this county ***.

2. The names and residence addresses of the minor's parents, legal guardian and/or custodian are:

Mother's Name:      Melissa A.

Residence Address   *** Keystone Ave #A

City, State Zip     Chicago, IL ***

Father's Name:      Tyrone J.

Residence Address   *** Keystone Ave #A

City, State Zip     Chicago, IL ***[2]

3. The minor was taken into custody on November 9, 2006 at 3:30 pm.

4. A Temporary Custody Hearing has been set for November 14, 2006, at 11:00am.

---

[2]The identifying information of the parties, who successfully moved this court to proceed anonymously, will be omitted from this opinion.

5. The minor was neglected pursuant to the Juvenile Court Act, section 0702 [sic] 405/2-3(1)(b); he is a minor under 18 years of age whose environment is injurious to his welfare.

The facts supporting this are:

Mother has eight prior indicated reports of abuse and neglect. Mother has five other minors who were in DCFS custody with findings of abuse and neglect having been entered. Mother admits to using illegal substances while pregnant with this minor's sibling. Mother tested positive for illegal substances at the time of this minor's sibling's birth. Mother admitted this minor was also born substance exposed. Mother and putative father reside together. Paternity has not been established.

6. The minor was abused in that his/her parent or immediate family member, or any person responsible for his/her welfare, or any person who is in the same family or household as the minor, or any individual residing in the same home as the minor, or paramour of the minor's parent, pursuant to the Juvenile Court Act section 0705 [sic] 405/2-3(2)(ii); creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of

1-07-1078

emotional health or loss or impairment of any bodily
function.

The facts supporting this are:

Mother has eight prior indicated reports for abuse and
neglect.  Mother has five other minors who were in DCFS
custody with findings of abuse and neglect having been
entered.  Mother admits to using illegal substances while
pregnant with this minor's sibling.  Mother tested positive
for illegal substances at the time of this minor's sibling's
birth.  Mother admitted this minor was also born substance
exposed.  Mother and putative father reside together.
Paternity has not been established.

7. The minor is not the subject of another child custody
proceeding or visitation order or has possible Indian Tribal
affiliation.

WHEREFORE, petitioner prays that the minor be adjudged a
ward of the Court and that the Court enter such orders as
are in the best interest of the minor, and other relief
under the Juvenile Court Act."

On November 14, 2006, the circuit court held a hearing on
the State's petition for adjudication of wardship and motion for
temporary custody for Tyrese.  Melissa and Tyrone stipulated to
the following facts:

5

"1: If called to testify, DCP Investigator George Redmon would state that Tyrese J. is a male minor born on December 5, 2004;

2: Teeron J. is a male minor born on November 4, 2006.

3: Melissa A. is the natural mother of the aforementioned minors and was custodial at all relevant times;

4: Tyrone J. is the natural father of the aforementioned minors and was custodial at all relevant times;

5: Mother has eight prior indicated reports for abuse and neglect;

6: Mother has five other minors who were in DCFS custody with findings of abuse and neglect having been entered;

7: Mother admits to using illegal substances while pregnant with Teeron J.

8: Mother tested positive for illegal substances at the time of Teeron J.'s birth.

9: Mother admitted Tyrese J. was also born substance exposed;

10: Mother and natural father reside together;

11: Teeron was born with some amount of a controlled substance of its metabolite in the minor's blood, urine or meconium.  And the presence of the controlled substance or its metabolite was not the result of medical treatment

6

administered to the mother or the minor."
All parties stipulated to the above facts and the circuit court accepted the stipulation.

Following an admission of paternity, the circuit court found Tyrone to be Tyrese's father. The court appointed a private attorney to represent Tyrone and the Cook County public defender to represent Melissa.

Based on the stipulation, the circuit court found that probable cause and urgent and immediate necessity existed and ordered that temporary custody of Teeron and Tyrese be taken. Counsel for Tyrese asked to elicit testimony from Redmon relative to Tyrese's placement. The following colloquy occurred:

"MR. STERBENC [Assistant Public Guardian]: Q. Currently, Tyrese, the older of the two children, is placed by the Department in the home of his paternal grandmother, correct?

A. That's correct.

* * *

Q. The biological mother and father of these children live in a family apartment building, and the parents live in Unit A, correct?

A. That's correct.

Q. Along with the parents also lives a paternal aunt and that aunt's boyfriend, is that right?

7

A. The aunt lives there.  The boyfriend do not [sic] live there.

* * *

[THE COURT]: Just so I'm clear, the paternal aunt lives with the mother and father?

[THE WITNESS]: Right

THE COURT: At XXX N. Keystone?

A. Correct.

MR. STERBENC: In the same building, unit C?

A. Not in the same building.  They are two separate units. A,B,C.  Separate houses.  Individual homes.

Q. At XXX N. Keystone, Unit C.

A. Right.

Q. That is where the paternal grandmother resides and where the children will be placed?

A. Correct.

Q. Also in the home of the paternal grandmother, are a paternal aunt, a paternal uncle and a paternal cousin, correct?

A. Correct.

Q. The paternal aunt who lives in the same home as the grandmother has a 1997 conviction for manufacture for [sic] controlled substance for which she served prison time,

8

correct?

A. That's correct.

Q. Also, the paternal uncle who lives in that same home has five convictions, two of which are for armed robbery, both of which resulted in prison time, correct?

A. Correct.

Q. The paternal cousin is an 18 year old female who was arrested on October 17th of this year on a charge of aggravated battery with a weapon, is that right?

A. Correct."

On cross-examination, testimony was elicited from Redmon that he placed Tyrese with his paternal grandmother because he had a very strong bond with her.

Gordon Newman, a follow-up case manager with Catholic Charities, testified that he was assigned to review the placement of the children. He testified that although he had not reviewed the placement of the children, he expected his organization to conduct a clinical staffing to assess the long-term appropriateness of the Department's placement within a week's time.

The State requested medical records for Melissa and Teeron. The court noted that the petition did not allege that Tyrese was a drug-exposed infant, yet it ordered Tyrese's medical records

9

<u>sua</u> <u>sponte</u>, stating:

> "It's the court's duty to direct the proceedings to gain all the jurisdiction [<u>sic</u>] facts, to determine what is in the best interest of the minors.
>
> She admits that the child was born drugs [<u>sic</u>] exposed. The State didn't add a charge that the minor is born drug exposed, and maybe that's because the minor wasn't born drug exposed. But if the minor was born drug exposed, that's something that I would need to know. I'm going to order the release of the birth records of the minor, Tyrese J., based on what is alleged in the petition.

The children were placed with their paternal grandmother; however, on December 29, 2006, the children were removed from their grandmother's house and placed with their adult half sister and Tyrone's daughter, Venita C.

On January 3, 2007, Tyrone filed a motion for the return home of Teeron and Tyrese. The assistant public guardian requested a drug test of Tyrone, which was denied by the circuit court before it continued Tyrone's motion for a hearing. On January 19, 2007, Melissa filed a motion for the return home of Teeron and Tyrese and indicated that Tyrone desired to proceed on his motion, but he did not appear in court. At this hearing, the court proceeded with a family conference in Tyrone's absence.

The court ordered that the conference take place on the record due to Tyrone's absence. Rhonda Smith, a caseworker with Catholic Charities, testified that Tyrone had a substance abuse evaluation the previous month which indicated that no services were necessary; however, two urine tests were required. Tyrone completed one test, which tested positive for opiates. Both Melissa's and Tyrone's motions were continued for hearings on February 15, 2007. On that date, Melissa withdrew her motion and the court struck Tyrone's motion without prejudice. Tyrone did not appear in court on February 15, 2007.

On April 7, 2007, an adjudicatory hearing was had on Tyrese's and Teeron's cases. The State called Nichole McArthur, who testified that she was a Department investigator assigned to Tyrese's case in 2004. She received a hotline call on December 6, 2004, that an infant was born exposed to opiates at Mount Sinai Hospital. Melissa also tested positive for marijuana. Melissa admitted to McArthur that she used marijuana and heroin. McArthur offered and Melissa accepted an inpatient drug treatment service. McArthur opened an "intact family" case file at that time.

The State called George Redmon, who was also an investigator for the Department and was assigned to Teeron's case on November 5, 2006, following a hotline call to the Department on November

11

4, 2006, that Teeron was born exposed to cocaine. On November 7, Redmon spoke to Melissa and Tyrone. Melissa told Redmon that she had been in drug treatment, but left five or six months before Teeron's birth. She also told Redmon that she lived next-door to Tyrese, who lived with his father, Tyrone. Melissa indicated that she had attended Lutheran Social Services as an outpatient, but that she left because she had a problem with her counselor. Redmon testified that he referred her to an inpatient program for rehabilitation due to her struggles with outpatient services.

On cross-examination, Redmon testified that Melissa was told by her intact counselor that if she tested negative for drugs in eight urine tests, her case would be closed. Although there was no evidence that Melissa underwent and passed eight urine tests, her intact case was, in fact, closed.

Redmon then spoke to Tyrone while Melissa was present in his apartment. Tyrone admitted that he was Tyrese's and Teeron's father and that he attempted to assist Melissa in her drug treatment. Tyrone also told Redmon that he completed a drug addiction program at Bobby Wright in 1999. He indicated that Melissa was staying with him in his apartment because there had been a fire in her apartment. Tyrone admitted to Redmon that he was aware that Melissa abused illegal drugs.

Tyrone told Redmon that Tyrese lived with him and that his

12

mother and sister assisted him with Tyrese's care. Redmon testified that Tyrese appeared to be well cared for and happy and he observed no signs of abuse or neglect. Tyrese also appeared to be developing appropriately for his age. Redmon, however, took the children into protective custody because he believed that Melissa was living with Tyrone and viewed her presence as a risk to the children.

The State entered Tyrese's medical records from Mount Sinai Hospital into evidence, over Melissa's and Tyrone's objections. According to the records, Tyrese's urine tested positive for opiates on December 5, 2004. The following day, hospital officials contacted the Department to investigate Tyrese and Melissa. Gil Izraeli from the Department met with Melissa and Tyrone on December 13, 2004. Melissa reported that she gave custody of her children, other than Teeron and Tyrese, to her grandmother because she was actively using drugs and unable to care for them. Melissa stated that she was "clean" for seven years, but began to use drugs again following several deaths in her family and because she was in a troubled relationship. Melissa reported to Izraeli that she used drugs on December 4, the day before Tyrese's birth, but claimed that she was quitting on her own.

Nursing discharge notes dated December 13, 2004, were also

13

admitted into evidence. The notes indicated that "Mother reports that she used heroin approx one wk ago and twice in the past month. She states that she uses heroin on and off. States that she used regularly for eight years and stopped without rehabilitation." Also, registration records dated July 17, 2005, for Tyrese show his address and Melissa's address as XXX N. Keystone, Chicago, Illinois. Registration forms dated December 5, 2004, the date of Tyrese's birth, show the same address. The infant discharge form for December 7, 2004, which also names Tyrone as the father, is signed by Melissa and shows XXX N. Keystone as her address.

The State admitted Teeron's medical records from Mount Sinai Hospital into evidence. All medical records admitted relative to Teeron and Melissa calling for an address showed the same Keystone address. Tyrone was named as the father and his address was also the Keystone address. The records indicated that Melissa tested positive for marijuana, cocaine and opiates on July 30, 2006. Records dated November 6, 2006, denoted that Teeron exhibited withdrawal symptoms and his meconium tested positive for cocaine. Melissa admitted to investigator Jennifer Hall that she had been addicted to heroin on and off for 10 years.

Melissa's medical records and social work assessments were

also admitted into evidence. These records included statements from Melissa in a November 4, 2006 social worker's assessment that she had custody of a two-year-old child and that she lives with the child's paternal grandmother. She further stated that she has been using heroin for 10 years and used cocaine occasionally. Melissa declined inpatient treatment offered by the social worker because she had been in treatment previously and it would not help her. However, she indicated that Tyrone and his mother did not abuse drugs. A patient progress report from November 4, 2006, indicated that Melissa admitted using heroin on November 3, 2006, one day before Teeron's birth.

Finally, the State admitted prior court orders finding abuse and neglect pertaining to Melissa's older children who were not fathered by Tyrone. On January 6, 1998, the court involuntarily terminated Melissa's maternal rights to four of her children for failure to maintain a reasonable degree of interest, being addicted to illegal drugs and failure to make progress and efforts. The parties rested.

In closing arguments the State argued that Tyrese and Teeron were both neglected because they were born exposed to illegal drugs and their environment was injurious. The State requested that the court enter this finding as to Tyrese even though the petition was not amended to allege that Tyrese was born exposed

15

to controlled substances pursuant to section 2-3(1)(c) of the Act. The State was of the view that the evidence supported a conclusion that Tyrese was born substance exposed. The guardian ad litem concurred with the State's position.

Melissa objected to a finding of neglect based on exposure to controlled substance at birth with regard to Tyrese or to amending the pleadings, in which Tyrone joined. Melissa and Tyrone both argued that it would be unfair to allow the State to amend the petition to conform to the proofs after the close of evidence.

The State responded that the pleadings were, in essence, only technically incorrect and Tyrone and Melissa could not claim surprise or prejudice because Tyrese's medical records showed that he was born drug exposed, they had those records long before trial, and the petition alleged that the mother admitted that Tyrese was born exposed to a controlled substance.

The circuit court found, with regard to Tyrese, that the State was late in seeking to amend the pleadings and noted that it would be unfair to the parents to allow the State do so after the close of evidence. The court went on to state:

"Now, even in other cases, I've conformed my findings to the facts; and the Court has, on its own, amended the pleadings; but in this case, the Court does not believe that

16

that would be in the interests of fairness or justice. So at this time I'm not going to grant the State's request to amend the pleading to allege neglect/controlled substance. There is just no explanation for why, prior to the close of the proofs today, there hadn't been a request to make that amendment.

As to Teeron the Court makes a finding of neglect/controlled substance. The minor was born exposed to a controlled substance. That was alleged in the petition. The evidence supports the State has proved that be a preponderance of the evidence with regards to Teeron. His toxicology, in the medical records, was positive. He also had suffered, apparently withdrawal symptoms; and in fact, the evidence from the testimony today corroborates the fact that the mother had apparently been using an illegal substance.

* * *

Now, with regard to Teeron, the Court believes that, because the evidence does know [sic] here that Tyrese had been born drug-exposed and now she has another child Teeron being born drug exposed, that's neglect/injurious environment based on a theory of anticipatory neglect because of the fact that we have (2) minors born exposed to

17

controlled substances.  So, as to Teeron, I'm finding both neglect/controlled substances and neglect/injurious environment.  As to Tyrese, though, the argument is that this Court should make a finding of neglect/injurious environment as to Tyrese because of his mother's drug problem.  But Tyrese is not situated in the same way as Teeron.  Tyrese was born December 5th of 2004 almost (2) years before Teeron.  Apparently during that period of time, the minor was being cared for by his father who had support from the paternal grandmother and the father's sister, a paternal aunt.

Now, at some point the natural mother apparently moved into the father's home.  She apparently had been living next door; and the evidence is at some point she moved in becuase of - - there had been fire in her place; but it appeared to the DCP investigator, Mr. Redmon, that in fact the minor appeared to be healthy and well-cared for.

Now, at this point, the Court finds there is insufficient evidence of neglect/injurious environment for this minor (Tyrese) because, in fact, the minor been placed by his father for (inaudible) years apparently without any problem or without any incident so the Court believes that, in theory of anticipatory neglect, it would be inappropriate.

18

1-07-1078

***

    And, although the mother does present a risk, the Court finds that, based on the fact that Mr. J. apparently continuously parented the minor apparently with the consent of the DCFS who had immediately investigated the circumstances of Tyrese's birth and allowed the minor to remain with Mr. J. it doesn't appear to me that at this point there's proof by a preponderance of the evidence of neglect/injurious environment."

Following the court's ruling, a recess was had and the case recalled for purposes of scheduling Teeron's dispositional hearing. The State again renewed its motion to reopen the proofs and conform its petition to the proofs relative to neglect due to being born substance exposed. In addition, the State, joined by the guardian, argued that the court should reconsider its ruling that Tyrese was not neglected due to an injurious environment and, if unsuccessful on its motions, that the court should stay its order until a formal motion for reconsideration could be filed. The circuit court denied the State's motions and its request to stay the proceedings and keep Tyrese in temporary custody of the State. The court stated that, "I acknowledge that there was proof that the minor was born exposed to controlled substance. The minor was not alleged to have been born exposed

19

to controlled substance; and, therefore, the court did not make a finding of neglect/controlled substance as to Tyrese."

The circuit court entered its written adjudication order on April 27, 2007, stating:

"No finding of DEI [drug exposed infant] b/c no 'good cause' offered to the court for amending the petition after the proofs had closed, and where the petition did not allege neglect under section 2-3(1)(c).

Minor's environment was not injurious b/c minor was living w/ his father since birth, for almost 2 yrs at time of protective custory & was well cared for, even though his mother gave birth to a drug exposed sibling in 11/06.  DCFS had monitored this minor's care after the minor's birth & provided intact family srvcs [services] to the Mother and closed this minor's case prior to the sibling's birth. Previously born siblings who had been court involved in the 1980's & 1990's had fathers other than the father of this minor.  This minor was not in substantial risk of physical injury based on the evidence presented."

The State and Tyrese timely appealed the judgment of the circuit court.

ANALYSIS

I. JURISDICTION

1-07-1078

Preliminarily, we address the matter of appellate jurisdiction because Tyrone contends that Tyrese's notice of appeal lacks sufficient specificity relative to the State's oral motion to reopen the proofs prior to the circuit court's ruling. According to the record, the State made an oral motion to amend the pleadings prior to the ruling, but after the proofs had closed. The State again sought to amend its pleadings after the court issued it's ruling. Tyrone claims that Tyrese's notice of appeal does not indicate that he is appealing the circuit court's denial of his oral motion to amend the pleadings prior to the court's ruling.

A notice of appeal shall specify the judgment of part thereof appealed from and the relief sought from the reviewing court. Illinois Supreme Court Rule 303(b)(2) (155 Ill. 2d R. 303(b)(2)). "Supreme Court Rule 303(b)(2) [citation], requires a notice of appeal to 'specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court'. In Burtell v. First Charter Service Corp., 76 Ill. 2d 427, (1979), our supreme court noted that 'the appeal from a subsequent final judgment "draws in question all prior non-final orders and rulings which produced the judgment." [Citation.]' Burtell, 76 Ill. 2d at 433. Furthermore, 'it is generally accepted that a notice of appeal is to be liberally

21

construed.' Burtell, 76 Ill. 2d at 433." In re D.R., 354 Ill. App. 3d 468, 471 (2004); In re Marriage of Betts, 159 Ill. App. 3d 327 (1987). This court does not have jurisdiction to review judgments that are not specified or fairly inferred from the notice of appeal; however, appellate jurisdiction may still be conferred if the notice of appeal fairly and accurately advises the parties of the nature of the appeal. Burtell, 76 Ill. 2d at 433-34.

We reject Tyrone's contention that this court lacks jurisdiction because Tyrese's notice of appeal states that he "appeals from the trial court's April 27, 2007 order." In that written order, the circuit court specifically made a finding that Tyrese was not a drug-exposed infant because the State offered "no good cause to the court for amending the petition after the proofs had closed." Tyrese specifically requested, among other things, in his notice of appeal that we "find that the trial court erred in determining that he was not neglected due to exposure by controlled substance." The circuit court's finding that Tyrese was not born exposed to drugs was based on its denial of the State's motion to amend the petition. In our view, Tyrese's timely notice of appeal gave more than adequate notice to appeal all findings contained in the April 27, 2007 adjudication order. We thus hold that jurisdiction for all

22

claims on appeal properly lies with this court.

## II. DENIAL OF THE STATE'S MOTION TO AMEND

"All proceedings under the [Act] [citation], are brought in the best interests of the child involved and should not be undertaken lightly. At an adjudicatory hearing, a trial court must determine whether a minor is abused, neglected, or dependent and the State must prove its allegations by a preponderance of the evidence. [citation]." In re C.M., 351 Ill. App. 3d 913, 916 (2004). The findings of the circuit court are afforded great deference and should not be disturbed unless those findings are against the manifest weight of the evidence. In re A.P., 179 Ill. 2d 184, 204 (1997).

The State and Tyrese argue on appeal that the circuit court erred in finding that Tyrese was not neglected due to an injurious environment and by not allowing the State to amend its pleadings to conform to the evidence showing that Tyrese was born exposed to illegal substances.

We first address Tyrese's argument that the State should have been allowed to amend the pleadings prior to the circuit court's ruling. Section 2-13(5) of the Act states:

> "The court shall liberally allow the petitioner to amend
> the petition to set forth a cause of action or to add,
> amend, or supplement factual allegations that form the basis

23

for a cause of action up until 14 days before the adjudicatory hearing. The petitioner may amend the petition after that date and prior to the adjudicatory hearing if the court grants leave to amend upon a showing of good cause. The court may allow amendment of the petition to conform with the evidence at any time prior to ruling. In all cases in which the court has granted leave to amend based on new evidence or new allegations, the court shall permit the respondent an adequate opportunity to prepare a defense to the amended petition." 705 ILCS 405/2-13(5) (West 2006).

In order to determine whether the trial court has abused its discretion, a reviewing court must look at four factors established in Kupianen v. Graham, 107 Ill. App. 3d 373 (1982) and adopted by our supreme court in Loyola Academy v. S & S Roof Maintenance, Inc., 146 Ill. 2d 263, 273-74 (1992). "These factors are: (1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." Loyola Academy, 146 Ill. 2d at 273.

The circuit court has broad discretion in motions to amend pleadings prior to entry of final judgment and, as a result, a

reviewing court will not find that denial of a motion to amend is prejudicial error unless there has been a manifest abuse of such discretion.  Loyola Academy, 146 Ill. 2d at 273-74, citing Mundt v. Ragnar Benson, Inc., 61 Ill. 2d 151, 160-61 (1975), and Austin Liquor Mart, Inc. v. Department of Revenue, 51 Ill. 2d 1, 8 (1972).  The Loyola Academy court further noted that " '[J]udicial discretion must be exercised within the bounds of the law [citation] and any question regarding the proper exercise thereof is always subject to our review [citation].  Further, where the exercise of discretion has been frustrated by the application of an erroneous rule of law, review is required to permit the exercise in a manner 'consistent with the law'."  Loyola Academy, 146 Ill. 2d at 274.

In the instant case, we agree with the parties that the proper rule to be applied here is the four-factor test enumerated in Loyola Academy.  However, we must also be mindful that all proceedings under the Act are brought within the framework of the minor's best interests.  In re C.M., 351 Ill. App. 3d at 916. With this standard in mind, we note that the circuit court indicated that it would be unfair to the parents to allow the State to amend its petition and did not mention Tyrese's best interest when denying the State's motion.  Although the fairness to the parties is not irrelevant by any means, we find this basis

25

to be insufficient under the circumstances of this case.

First, there is no doubt that the proposed amendment was not timely and the State had identifiable opportunities to amend prior to its request at the close of the evidence. However, amending the petition in this case would not only cure the defect with Tyrese's pleading, it would certainly conform the pleading to the proofs. Second, and most importantly, no prejudice or surprise would arise from amending the petition. The petition stated that Melissa admitted that Tyrese was born drug exposed. Melissa and Tyrone stipulated to Tyrese's drug-exposed birth at the temporary custody hearing, Tyrese's medical records indicated that his urine tested positive for opiates and Melissa's records showed that she admitted using heroine the day before Tyrese was born. We further note that the circuit court ordered Tyrese's records sua sponte because it was "something that [it] would need to know." Throughout the entire case, all parties were aware that Tyrese was alleged to have been born exposed to heroin. Tyrese was born exposed to opiates and no evidence in the record indicated otherwise.

We agree with the circuit court's conclusion that the State had no good explanation for waiting until the close of the evidence to seek leave to amend the petition pursuant to section 2-13 of the Act. This, however does not mean that the State's

basis for amending the petition did not amount to good cause. The State acknowledged that it could not explain why it had not alleged that Tyrese was born drug exposed and admitted that this omission was a mistake. The State further argued that the focus of the hearing is the best interests of the minor and he should not suffer the consequences for its error. We agree and find Ott v. Little Company of Mary Hospital, 273 Ill. App. 3d 563, 570-71 (1995), to be instructive on this issue.

In Ott, we reemphasized long-standing public policy in Illinois that the rights of minors are to be guarded carefully. Ott, 273 Ill. App.3d at 570, citing Mastroianni v. Curtis, 78 Ill. App. 3d 97, 100 (1979). "Every minor plaintiff is a ward of the court when involved in litigation, and the court has a duty and broad discretion to protect the minor's interests." Ott, 273 Ill. App. 3d at 570-71, citing Burton v. Estrada, 149 Ill. App. 3d 965, 976 (1986). While Ott and its predecessors imposed this duty on courts dealing with minors in litigation that was not brought under the Act, we hold that this same duty is as applicable, if not more so, in an adjudication for wardship than in the cases cited above, due to the fact that allegations of abuse and neglect have been raised with regard to the minor. We hold that the circuit court has an obligation to intervene when a minor's representative fails to protect his interests. Tyrese

27

should not be called upon to answer for the State's mistakes at the cost of being placed in an injurious environment when there is no reasonable explanation for State's omission. The circuit court should have either allowed the State to correct the mistake that it admitted or amend the petition sua sponte. Doing so would have been in harmony with the purpose of the Act and in accordance with its duty to protect a minor's interest.

We note that at one point, Tyrone and Melissa argued that the State must have had strategic reason to not allege that Tyrese was born exposed to drugs. We, however, cannot imagine any logical reason for not alleging that Tyrese was born drug exposed, especially when Melissa conceded the fact and medical records confirmed that Tyrese had opiates in his urine. We cannot see how ignoring the fact that Tyrese was born exposed to heroin serves his best interests in this case. In light of the fact that no party could claim surprise for this specific amendment, no prejudice would arise, and the best interest of the minor is always the focus of all proceedings under the Act, we hold that the circuit court abused its discretion in denying the State's motion to amend the petition.

III. FINDINGS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

The circuit court based its denial of the State's petition and it's finding that Tyrese was not neglected due to an

28

injurious environment on its ruling that Tyrone was the sole parent of Tyrese and that he and Melissa lived separately. The State and Tyrese argue that these findings are against the manifest weight of the evidence. We agree and specifically address this finding because the circuit court found Teeron's environment to be injurious due to exposure to Melissa. Yet, the circuit court held that Tyrese was not neglected because Melissa did not live with Tyrone and Tyrese was not exposed to Melissa.

A careful review of the record reveals that the only evidence produced at the adjudication or temporary custody hearing about Melissa's living arrangements was Redmon's testimony that Melissa lived in a different unit within the same building. Aside from that second-party testimony, Melissa and Tyrone indicated in a stipulation that they resided together. In other documents produced in preparation for the hearing and in all medical records, Melissa, Tyrone, Tyrese and Teeron all listed the same address. In addition there was no evidence that Melissa lived anywhere other than with Tyrone or in the family building. Furthermore, although Melissa and Tyrone deny carrying on a relationship in their appeals and claim that they lived separately, there was, no doubt, some contact approximately nine months prior to Teeron's birth and at the time Redmon investigated Teeron's case. Moreover, Redmon nevertheless took

29

protective custody of both children because they were exposed to Melissa and he viewed her as a risk to both Tyrese and Teeron.

Under the manifest weight of the evidence standard, the circuit court's ruling fails to meet the standard if the opposite conclusion is clearly evident or the ruling is unreasonable, arbitrary or not based on the evidence presented to the court. In re D.F., 201 Ill. 2d 476, 498 (2002). We concede that the manifest weight of the evidence standard is a very high bar and significant deference is afforded the circuit court. In re D.F., 201 Ill. 2d at 498-99. However, based on the evidence in the record, the circuit court's finding that Tyrone and Melissa did not live together and that Tyrone was the sole custodial parent of Tyrese was against the manifest weight of the evidence.

CONCLUSION

For the foregoing reasons, we hold that the circuit court erred in denying the State's motion to amend its petition. We also hold that the court's finding that Tyrone had sole custody of Tyrese and that Tyrese was not exposed to Melissa was against the manifest weight of the evidence. Accordingly, the judgment of the circuit court is reversed and this matter is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

McBRIDE, PJ., and JOSEPH GORDON, J., concur.