2020 IL App (1st) 191665-U

FOURTH DIVISION
February 13, 2020

No. 1-19-1665

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* D.H., a Minor, | ) ) ) | Appeal from the Circuit Court of Cook County |
| (The People of the State of Illinois, | ) ) | |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) | No. 18 JA 155 |
| Barbara W., | ) ) ) | |
| Respondent-Appellant). | ) ) ) | Honorable Andrea Buford, Judge Presiding. |
| | ) ) | |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

## ORDER

¶ 1   *Held*:   Affirming the judgment of the circuit court of Cook County finding the minor was neglected due to lack of care and an injurious environment.  Vacating the portion of the circuit court's order finding the minor was abused where the written order conflicted with the circuit court's oral pronouncements.

¶ 2   Following an adjudicatory hearing, the circuit court found that the minor, D.H., was

neglected due to lack of care and was in an injurious environment pursuant to the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(a), (b) (West 2018)). At a subsequent dispositional hearing, the court found that the minor's parents, respondent Barbara W. (respondent) and Norris H. (who is not a party to this appeal), were unable and unwilling to care for the minor and adjudicated the minor a ward of the court. On appeal, respondent requests this court amend the adjudication order as it indicated the circuit court found the minor to be abused in contravention of the court's prior oral pronouncements. Respondent further argues that the circuit court's finding of neglect was against the manifest weight of the evidence and, in fact, the evidence supported a finding of dependency. Lastly, respondent maintains that she received ineffective assistance of counsel where her counsel failed to file a petition seeking dependency. For the following reasons, we vacate the portion of the circuit court's written order finding the minor was abused and affirm the court's finding of neglect.

¶ 3                                    BACKGROUND

¶ 4       The minor was born on November 29, 2006. On February 15, 2018, the State filed a petition for adjudication of wardship alleging that, pursuant to the Juvenile Court Act, the minor was neglected due to a lack of care and an injurious environment (705 ILCS 405/2-3(1)(a), (b) (West 2018)) and abused because he was at substantial risk of physical injury (705 ILCS 405/2-3(2)(ii) (West 2018)). The State alleged that: respondent had two prior indicated reports for inadequate supervision, cuts, bruises, welts, abrasions, and oral injuries; the minor was located wandering around outside and police personnel were unable to contact respondent; the minor was discovered outside on January 14, 2018, while in his father's care, inappropriately dressed for the weather; and that the minor reported his father hits him.

¶ 5       Beginning October 31, 2018, and concluding on April 22, 2019, an adjudication hearing

was conducted at which the following facts were adduced. In August 2017, the minor resided with his mother. In September 2017, minor authored a suicide note that was discovered by a teacher at the minor's school. The school immediately contacted his mother. The minor, however, left the school grounds before his mother arrived and the police were called. Later that evening the minor returned to the school with his father. The minor was then admitted to Garfield Park Behavioral Hospital where he remained for two weeks before being discharged. The minor's medical records disclosed that he authored the suicide note to gain the attention of his father. The minor was diagnosed with major depressive disorder and was treated with medication and therapy. Both of his parents participated in family therapy sessions while the minor was admitted to the hospital.

¶ 6    Upon his discharge from the hospital, the minor resided with his father pursuant to the minor's request. While his behavior in school initially improved, his social studies teacher Mona Iehl testified that he arrived late to school four out of five days a week, would throw up daily, exhibited disruptive behavior in the classroom, and would yell at his teachers. The minor also lacked the appropriate school supplies and was failing fifth grade. Iehl and the school social worker, Meghan Princehorn, testified they had difficulty reaching either of the minor's parents to discuss the minor between October 2017 and February 2018. Respondent also testified that in late December 2017 the minor reported to her that the father "whipped him" and hit him on the back with a stick injuring him.

¶ 7    In January 2018, the father met with Iehl and Princehorn to discuss the minor's behavioral issues and academic performance. At this meeting, the father agreed to work with the minor at home but also indicated that either the minor was no longer taking medication or would be taken off of the medication. While the minor's behavior improved after this meeting, his

behavior deteriorated shortly thereafter. On January 14, 2018, the minor was discovered by police officers walking outside alone without shoes or a coat. According to Chicago police officer Scott Ruckrich, the minor disclosed that he had run out of his home because his father "beat him." While speaking with the officers, the father approached with shoes and a coat for the minor. The father explained that the minor ran away often. The officers examined the minor for signs of abuse and found none. No police report was filed. The minor further missed between five and 10 days of school between January 2018 and February 16, 2018.

¶ 8    On February 5, 2018, the father missed a follow-up meeting at the minor's school. The father also failed to attend the make-up meeting scheduled for February 6, 2018. Around this time, the minor had temporarily resided with respondent and his siblings. Respondent, however, expressed that the minor's presence in her home was temporary because he created a chaotic home environment and she had concerns for the safety of her other children. Respondent did not elaborate as to what those safety concerns were. Respondent also testified that during this temporary stay, the minor left the home without informing anyone and respondent had to call the police. The minor then went to stay with his father's ex-girlfriend. In March 2018, the minor was placed in a foster home.

¶ 9    The State introduced evidence that respondent had, in 2016, pled guilty to misdemeanor child endangerment where the factual findings disclosed she had struck the minor about the torso, arms, and leg with a belt causing him physical injury.

¶ 10    As the public guardian's witnesses did not respond to subpoenas, the public guardian made the following offer of proof: that Shimika Thompson, a child protection investigator employed by the Department of Child and Family Services, would testify that respondent reported the father "whipped" the minor and that in February 2018, the minor was "floating"

from "place to place" and did not have a home. Respondent further informed Thompson that the minor told her his father was mad "because he can't get no weed" and that he left the father's home and "walked the streets all night." Thompson would further testify that respondent did not have an alternative home for the minor.

¶ 11    The public guardian also made an offer of proof as to the father's testimony that, if called, he would testify that he had no place for his son to go.

¶ 12    During closing arguments, the State reiterated the evidence and asked the circuit court to consider "the totality of the evidence for an injurious environment. We also allege neglect/care necessary and abuse/substantial risk of injury, but we concede that this is primarily a neglect/injurious environment situation." The public guardian essentially agreed with the State, arguing that "this is just a simple, clear case of neglect" and "very clearly not a case of dependency." Neither the State nor the public guardian argued that the parents abused the minor in their closing arguments.

¶ 13    In response, respondent's counsel argued that the parents were unable to care for the minor and requested the circuit court make a finding of dependency. The father's counsel agreed, arguing that this was a case of dependency where the evidence demonstrated that the minor was without the proper medical or other remedial care recognized under the law through no fault of his parents.

¶ 14    The circuit court found by a preponderance of the evidence that the minor was neglected due to lack of care and lived in an injurious environment. No finding of abuse was rendered. In making this determination, the circuit court stated, "I don't even think it's a close case." The court continued:

       "the parents have prior indicated reports. The mother was criminally convicted. This

was a very chaotic home environment for the minor. He was late for school four out of five days of the week. He's been absent from school. He's failing in school. He's showing up at school without appropriate school supplies. He's throwing up at school on a daily basis.

The evidence was that the minor said that the father hit him on the back with a stick and was angry because he, the father, could not get his weed. The father did not keep his son on his medications. There was a period of time when the school could not reach either parent. There was a period of time when neither the mother nor the father knew where the minor was staying. Mom would not allow the minor back into her home because he disrupted her other children, and she could not offer an alternative place option."

The written adjudication order, however, also checked the box for "substantial risk/physical injury" pursuant to section 405/2-3(2)(ii) of the Juvenile Court Act (705 ILCS 405/2-3(2)(ii) (West 2018)).

¶ 15    The matter proceeded immediately to a dispositional hearing where Priscilla Herring, the minor's caseworker from April 2018 to February 2019, testified that respondent had not been in contact with any caseworker and did not have a reunification plan in place and the father, while initially participating in the process, had not successfully completed services. Herring further testified that the mother has not contacted the minor while he has been in foster care and that the father's contact with the minor has been sporadic.

¶ 16    The circuit court found that respondent and the father were unable and unwilling to care for, protect, train, and appropriately discipline the minor and adjudicated the minor a ward of the court. After respondent filed a motion to reconsider, which was denied, this appeal followed.

¶ 17                                    ANALYSIS

¶ 18    On appeal, respondent raises three issues:  (1) the circuit court found the minor to be abused in contravention of the court's prior oral pronouncements; (2) the circuit court's finding of neglect was against the manifest weight of the evidence and, in fact, the evidence supported a finding of dependency; and (3) she received ineffective assistance of counsel where her counsel failed to file a petition seeking dependency.  We address each claim in turn.

¶ 19                                   Abuse Finding

¶ 20    Respondent first argues that the circuit court's written adjudication order reflecting a finding of abuse conflicts with its oral pronouncement that respondent was only found to have neglected the minor.  Respondent observes that both the State and the public guardian did not proceed under a theory of abuse, but instead argued the case was "just a simple, clear case of neglect."

¶ 21    In response, the State agrees with respondent that this court should vacate the finding of abuse and correct the juvenile court's written adjudication order form to reflect findings of neglect based on lack of care and neglect based on an injurious environment.  The State also acknowledges that the written adjudication order does not reflect the circuit court's oral pronouncements.

¶ 22    The public guardian disagrees and argues that the circuit court's finding of abuse was consistent with the evidence established during the adjudication hearing.  While the public guardian acknowledges that it argued neglect in closing argument, on appeal the public guardian maintains such argument was made in response to respondent's claim that the finding be dependency, not neglect.  We find the public guardian's argument unpersuasive.  In particular, we find it disingenuous for the public guardian to argue that its closing argument was directed to

respondent's claim that she be found dependent where the record demonstrates that the public guardian did not argue abuse in closing and further concluded the argument by stating, "This clearly meets the burden for neglect/care necessary, as well as neglect/environment injurious."

¶ 23    We agree with respondent and the State.  "When a trial court's oral pronouncement is in conflict with its written order, the oral pronouncement prevails."  *In re K.L.S.-P.*, 381 Ill. App. 3d 194, 195 (2008) (citing *In re Taylor B.,* 359 Ill. App. 3d 647, 651 (2005)).  Here, the circuit court's oral pronouncement was that, "The Court finds by a preponderance of the evidence that the minor in this case is neglected, lack of care and injurious environment."  No finding of abuse was made.  While the factual findings asserted thereafter mentioned respondent's criminal conviction and that the father hit the minor on the back, these findings were made within the context of neglect due to an injurious environment.  Accordingly, we vacate the portion of the circuit court's April 22, 2019, adjudication order finding abuse.[1]

¶ 24                                      Neglect Finding

¶ 25    Respondent next argues that the circuit court's finding of neglect was against the manifest weight of the evidence where the evidence merely established that the minor was dependent.  In response, the State maintains that it established, by a preponderance of the evidence, that respondent was neglected based on lack of care and an injurious environment.  The public guardian agrees with the State.

¶ 26    The determination of the circuit court in a neglect case will not be disturbed on appeal unless it is against the manifest weight of the evidence.  *In re Arthur H.*, 212 Ill. 2d 441, 464

---

[1] In reaching this conclusion, we observe that no party addressed respondent's forfeiture of this argument because she did not raise it before the circuit court.  While the best practice is to raise issues regarding possible conflicts between oral pronouncements and written orders with the court entering those orders, due to the accelerated nature of this appeal we will excuse the forfeiture.  See Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994).

(2004). A determination is against the manifest weight of the evidence where the opposite conclusion is clearly apparent or the determination is unreasonable, arbitrary, or not based on the evidence presented. *In re D.F.*, 201 Ill. 2d 476, 498 (2002). "The reviewing court gives deference to the trial court's findings of fact as the trial court is in the best position to observe the conduct and demeanor of the parties and witnesses, assess their credibility, and weigh the evidence" presented at adjudicatory and dispositional hearings. *In re Sharena H.*, 366 Ill. App. 3d 405, 415 (2006). Accordingly, cases adjudicating wardship based on allegations of neglect are *sui generis*, and are decided based on the unique circumstances surrounding each case. *In re Arthur H.*, 212 Ill. 2d at 463. "Further, due to the delicacy and difficulty of child custody cases, it is well settled that wide discretion is vested in the trial judge to an even greater degree than any ordinary appeal to which the familiar manifest weight principle is applied." (Internal quotation marks omitted.) *In re R.S.*, 382 Ill. App. 3d 453, 459-60 (2008).

¶ 27     The Juvenile Court Act defines a "neglected minor" as one "who is not receiving the proper or necessary support, education as required by law, or medical or other remedial care recognized under State law as necessary for a minor's well-being, or other care necessary for his or her well-being, including adequate food, clothing and shelter." 705 ILCS 405/2-3(1)(a) (West 2018). Section 2-3(1)(b) of the Juvenile Court Act also defines a "neglected minor" as "any minor under 18 years of age *** whose environment is injurious to his or her welfare." 705 ILCS 405/2-3(1)(b) (2018). An "injurious environment" is "an amorphous concept that cannot be defined with particularity but has been interpreted to include the breach of a parent's duty to ensure a safe and nurturing shelter for his or her children." (Internal quotation marks omitted.) *In re K.B.*, 2012 IL App (3d) 110655, ¶ 16. Our courts have consistently recognized that a parent has a duty to keep her children safe and free from harm. *In re Gabriel E.*, 372 Ill. App. 3d 817,

823 (2007); *In re Kamesha J.*, 364 Ill. App. 3d 785, 793 (2006).

¶ 28    "Because the concepts of 'neglect' and 'injurious environment' have no fixed meaning and take their content from the particular circumstances of each case, each case involving such allegations must be decided on the basis of its unique facts." *In re Malik B.-N.*, 2012 IL App. (1st) 121706, ¶ 52. "However, as a general rule, neglect is the failure to exercise the care that circumstances justly demand and encompasses both willful and unintentional disregard of parental duty." (Internal quotation marks omitted.) *Id.* "It is the burden of the State to prove allegations of neglect by a preponderance of the evidence. In other words, the State must establish that the allegations of neglect are more probably true than not." *In re Arthur H.*, 212 Ill. 2d at 463-64.

¶ 29    Respondent urges this court to reverse the circuit court's findings of neglect and enter a finding of dependency under section 2-4(1)(c) of the Juvenile Court Act (705 ILCS 405/2-4(1)(c) (West 2018)). Under section 2-4(1)(c), a child can be found to be dependent under the no-fault provision if the child is without proper medical or other remedial care, or other necessary care for his or her well-being through "no fault, neglect or lack of concern by his parents, guardian or custodian." 705 ILCS 405/2-4(1)(c) (West 2018). As expressed in the statute, no-fault dependency can be found only where there is no fault, no neglect, and no lack of concern by the parents. *Id.*; *In re L.H.*, 384 Ill. App. 3d 836, 842-43 (2008). Parents must make continual good-faith efforts to meet the child's needs. *In re Z.L.*, 379 Ill. App. 3d 353, 381 (2008).

¶ 30    Respondent argues the facts support a finding of dependency where the minor created an unsafe environment in the home by bullying the other children, was unkind to his classmates, required major behavioral interventions at school, and would throw up at school when he was upset or avoiding certain activities he disliked. Respondent further points to the fact the minor

ran away from school in September 2017 and from his father's care in January 2018. Respondent also notes that both parents went to the school to discuss the minor's behavior in September 2017 and also participated in his care at the hospital.

¶ 31    The State argues that the evidence demonstrated respondent was uninvolved in the minor's education, did not know where the minor was residing, and refused to allow the minor to return to her home. In addition, respondent did not provide an alternative care giver for the minor. The State further asserts that no evidence was presented that the minor exhibited violence towards respondent or his siblings. The public guardian's arguments are in the same vein as those of the State.

¶ 32    In the instant case, the circuit court's findings that the minor was neglected due to a lack of care and was in an injurious environment were not against the manifest weight of the evidence. The record established that while respondent participated in family therapy sessions when the minor was admitted to Garfield Park Behavioral Hospital, she did not thereafter participate in the minor's life. Iehl and Princehorn testified that they were not able to effectively communicate with respondent and at times were unable to contact her to discuss the minor's behavior and academic performance. The evidence demonstrated that respondent was not involved in the minor's schooling from October 2017 through the filing of the petition for adjudication of wardship. The evidence further demonstrated that respondent did not want the minor to reside in her home. While respondent did allow the minor to stay at her home briefly in the beginning of February 2018, after he left her home she was not aware of where he was staying. The respondent did not provide an alternative option for the minor's care. See *In re Rayshawn H.*, 2014 IL App (1st) 132178, ¶ 31; *In re J.S.*, 2012 IL App (1st) 120615, ¶ 36.

¶ 33    Respondent's argument that the minor's behavior was violent and he could not reside in

her home due to the presence of her other children is belied by the record. Indeed, the record establishes that respondent viewed the minor's presence in her household as "chaotic" and testified that he "bullied" her other children. There was no testimony that indicated the minor exhibited violence toward her or her children. See *cf. In re Christopher S.*, 364 Ill. App. 3d 76, 89 (2006) (finding the minor dependent where evidence demonstrated the minor was violent and the parents feared for their family's safety). Accordingly, we conclude that the circuit court's finding of neglect was not against the manifest weight of the evidence.

¶ 34 In rendering this determination, we have also considered respondent's argument that the circuit court abused its discretion when it did not allow her to present evidence that she successfully completed intact family services after the petition for adjudication of wardship was filed. In response, the State and the public guardian argue that the court's exclusion of this evidence was proper where the completion of intact family services related to services for respondent's other children and not the minor.

¶ 35 We find that even if the circuit court erred in failing to allow the evidence of respondent's successful completion of intact family services the State would have met its burden. The purpose of the adjudicatory hearing is to determine whether the allegations of a petition that a minor is neglected are supported by a preponderance of the evidence. 705 ILCS 405/1-3(1) (West 2018). Under the Juvenile Court Act, the rules of evidence in the nature of civil proceedings are applicable to the adjudicatory hearing. 705 ILCS 405/2-18(1) (West 2018). "Whether evidence is admissible is within the discretion of the circuit court, and its ruling will not be reversed absent an abuse of that discretion." *In re Kenneth D.*, 364 Ill. App. 3d 797, 803 (2006). "All evidence must be relevant to be admissible." *Id.* "Evidence is relevant if it tends to prove a fact in controversy or render a matter in issue more or less probable." *Id.* While the

evidence of respondent's completion of intact family services as it related to her other children may have been remotely relevant, as previously discussed, the evidence established that respondent neglected the minor due to a lack of care and an injurious environment. See *In re Stephen K.*, 373 Ill. App. 3d 7, 29 (2007).

¶ 36    In sum, there was ample evidence supporting the circuit court's conclusion that the minor was neglected due to lack of care and an environment that was injurious to his welfare. An opposite conclusion is not clearly evident. We therefore affirm the circuit court's neglect finding.

¶ 37                              Ineffective Assistance of Counsel

¶ 38    Lastly, respondent argues that her counsel was ineffective for failing to amend the petition or to file a separate petition seeking dependency. While respondent acknowledges that her counsel orally requested a dependency finding, respondent maintains that "if the Court considers pleading the only permissible method of achieving a dependency result, it is submitted that counsel provided ineffective assistance." Respondent admits, however, that "if dependency is the proper finding, [she] was prejudiced." Because we have concluded the neglect finding was proper, respondent cannot be prejudiced and therefore her ineffective assistance argument fails.

¶ 39    Section 1-5(1) of the Juvenile Court Act (705 ILCS 405/1-5(1) (West 2018)) grants minors and their parents the right to be represented by counsel in juvenile proceedings. While the right to counsel in juvenile proceedings is statutory and not constitutional, "Illinois courts apply the standard utilized in criminal cases to gauge the effectiveness of counsel in juvenile proceedings." *In re S.G.*, 347 Ill. App. 3d 476, 479 (2004). Thus, courts review ineffective assistance of counsel claims in juvenile proceedings under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *In re S.G.*, 347 Ill. App. 3d at 479.

¶ 40    To establish ineffective assistance of counsel under *Strickland*, one must prove (1) counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *In re Charles W.*, 2014 IL App (1st) 131281, ¶ 32. To satisfy the deficiency prong of *Strickland*, the party must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). Further, the party must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *People v. Evans*, 186 Ill. 2d 83, 93 (1999). To satisfy the prejudice prong, the party must prove a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *In re J.V.*, 2018 IL App (1st) 171766, ¶ 199. The court need not consider the deficiency prong but may dispose of the claim where the party did not suffer any prejudice. *Id.*

¶ 41    Here, respondent cannot demonstrate that but for her counsel's failure to amend the petition to include dependency the result of the proceedings would have been different. Respondent's counsel argued for a finding of dependency, which was subsequently rejected by the circuit court when it entered a finding of neglect. As observed by the State, had the circuit court found that a dependency finding was warranted it could have *sua sponte* allowed an amendment of the petition. See 705 ILCS 405/2-13(5) (West 2018) ("The court may allow amendment of the petition to conform with the evidence at any time prior to ruling."); *In re Tyrese J.*, 376 Ill. App. 3d 689, 703 (2007) (holding the circuit court had an obligation to amend the petition *sua sponte* where the evidence did not support the allegations to protect the minor's interests). For the reasons stated above, however, the circuit court correctly concluded that the State established by a preponderance of the evidence that the minor was neglected due to lack of

care and an injurious environment. Accordingly, respondent's ineffective assistance of counsel argument fails.

¶ 42                                   CONCLUSION

¶ 43    For the reasons stated above, we vacate the portion of the circuit court's order finding the minor to be abused and otherwise affirm the judgment of the circuit court.

¶ 44    Affirmed in part; vacated in part.