FIFTH DIVISION
December 14, 2007

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)


LINDA A. WILL and GEORGE WHEELER, JR., as Independent )     Appeal from the
Coadministrators of the Estate of Rashidi Wheeler, Deceased, )     Circuit Court of
                )     Cook County.
    Plaintiffs-Appellants and Cross-Appellees, )

                )
v.                )     No. 05 L 1563
                )     (formerly 01 L 10149)
NORTHWESTERN UNIVERSITY, CHARLES TAYLOR, )
RANDALL WALKER, JERRY BROWN, TERRENCE ("Tory") )
AGGELER, LARRY LILJA, THOMAS CHRISTIAN, JUSTIN )
CHABOT, MICHAEL ROSE, MARK GARDNER, HOWARD )
SWEENEY, NEXT PROTEINS, INC., f/k/a Next Nutrition, Inc., )
d/b/a Next Proteins International, ULTIMATE ENERGY )
COMPANY, THE ULTIMATE ORANGE ENERGY )
COMPANY, LLC, CYTODYNE TECHNOLOGIES, INC., )
PHOENIX LABORATORIES, INC., and GENERAL )
NUTRITION CORPORATION, d/b/a General Nutrition )
Companies, Inc., a wholly owned subsidiary of Royal Numico NV, )
                )
    Defendants-Appellees and Cross-Appellants )
                )
(Northwestern University, Charles Taylor, Randall Walker, Jerry )
Brown, Terrence ("Tory") Aggeler, Larry Lilja, Thomas Christian, )
Justin Chabot, and Michael Rose, )
                )
    Third-Party Plaintiffs-Appellees; )
                )
Next Proteins, Inc., f/k/a Next Nutrition, Inc., d/b/a Next Proteins )
International, Ultimate Energy Company, The Ultimate Orange )
Energy Company, LLC, Cytodyne Technologies, Inc., Phoenix )
Laboratories, Inc., and General Nutrition Corporation, d/b/a )
General Nutrition Companies, Inc., a wholly owned subsidiary of )
Royal Numico NV, )
                )
    Third-Party Defendants-Appellees; )
                )

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

| | |
|---|---|
| Cochran, Cherry, Givens, Smith & Montgomery, LLC, | ) |
| | ) |
| Petitioner-Appellee; | ) |
| | ) |
| Linda Will, Individually and as Coadministrator of the Estate of Rashidi Wheeler, Deceased, George Wheeler, III, Individually, and Hershel Will, Individually, | ) ) ) |
| | ) The Honorable |
| | ) Kathy M. Flanagan, |
| Respondents-Appellants). | ) Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

The instant cause involves multiple actions.

Plaintiffs-appellants and cross-appellees Linda A. Will (Linda) and George Wheeler, Jr. (George Jr.), as coadministrators of the estate of their deceased son, Rashidi Wheeler (Rashidi), filed a wrongful death and survival action against defendants-appellees and cross-appellants Northwestern University and several of its employees, including Charles Taylor, Randall Walker, Jerry Brown, Terrance Aggeler, Larry Lilja, Thomas Christian, Justin Chabot, and Michael Rose (Northwestern).[1]  Following years of litigation which included the appointment of a guardian *ad litem*, a bankruptcy proceeding, a mediation, a demand for settlement and an objection to this settlement by Linda, the trial court approved settlement in the amount of $16 million.  Linda, both individually and in her capacity as coadministrator, and George Wheeler III (George III) and Hershel Will (Hershel), members of the estate of Rashidi Wheeler (the Estate) and in their

_____

[1]Northwestern University filed a third-party cause of action against several drug companies and stores.  However, neither that action nor those parties are part of the instant cause and, thus, none of them have filed a brief or appearance herein.

2

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

individual capacities, appeal, contending that the trial court did not have the authority to direct the acceptance of the settlement and execute documents over coadministrator Linda's objection. Having assumed that liability has been resolved in their favor and against Northwestern, they ask that we vacate the settlement and remand the matter for a trial on the sole issue of damages.

For its part, Northwestern has filed a brief on appeal in opposition to that of Linda, George III and Hershel, contending that (1) they have no standing to challenge the settlement; (2) the trial court did have the authority to accept the settlement in the name of the Estate; and (3) even if the court improperly accepted the settlement, the appropriate remedy is not a trial solely on damages but, rather, a remand for trial on all issues, including liability. Northwestern, which has already paid out the settlement sum into an escrow account, has also filed a cross-appeal, contending that the trial court erred in failing to include certain express language in its judgment regarding the return of the settlement proceeds to it if the settlement is set aside. Thus, Northwestern asks that we dismiss the instant appeal for lack of standing or, alternatively, that we affirm the judgment of the trial court; Northwestern further asks that, were we to reverse the judgment, we remand with instructions to order the return of the settlement proceeds, with accrued interest, to it.

George Jr., in his capacity as coadministrator, has filed an appearance and brief as well. Like Northwestern, he too contends that Linda, George III and Hershel do not have standing to raise the instant appeal and that the trial court had the authority to direct that the settlement be accepted and properly exercised that authority. Without addressing Northwestern's cross-appeal regarding the return of settlement proceeds if the settlement is set aside, George Jr. asks that we

3

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

affirm the settlement and judgment of the trial court.

Finally, petitioner-appellee, the law firm of Cochran, Cherry, Givens, Smith & Montgomery, LLC (Cochran), which represented Linda as coadministrator of the Estate,[2] has filed an appearance and brief in the instant appeal. The trial court's settlement and judgment ordered the payment of one-third of the portion received by Linda to Cochran, which she had discharged shortly before the settlement was accepted and ordered. Respondents-appellants Linda, George III and Hershel have devoted a portion of their brief on appeal to challenging this ruling, contending that the trial court abused its discretion in awarding the one-third fee to Cochran. While they ask that we vacate the fee award or, alternatively, that we reverse it and remand for an evidentiary hearing on the sufficiency of the fee petition, Cochran maintains that the trial court properly exercised its discretion and asks that we affirm the fee award.

For the following reasons, we dismiss the appeal with respect to Linda, George III and Hershel in their individual capacities for lack of standing; we affirm the settlement and judgment of the trial court with respect to Linda in her capacity as coadministrator, thereby rendering Northwestern's cross-appeal moot; and we affirm the trial court's one-third fee award to Cochran.

---

[2]Linda and George Jr., though coadministrators of the Estate, each had separate counsel representing them in this capacity during the settlement negotiations. While Cochran represented Linda, the law firm of Corboy & Demetrio, P.C. (Corboy) represented George Jr. Corboy is not involved in the instant appeal other than in its capacity as appellate counsel for George Jr., in conjunction with the law firm of Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C.

4

BACKGROUND

On August 3, 2001, Rashidi Wheeler, a student and football player at Northwestern University, died following a preseason conditioning drill during football practice. Rashidi had never married and did not have any children at the time of his death; his mother and father, Linda and George Jr.,[3] were appointed coadministrators of his estate. On August 8, 2001, Linda signed a contingency fee contract with Cochran, retaining that firm to represent her and agreeing to pay it one-third of the gross amount of whatever she recovered for the death of her son.

Linda and George Jr., in their capacities as coadministrators, filed an amended complaint on behalf of Rashidi's estate and his next-of-kin against Northwestern, alleging survival and wrongful death claims.[4] At this time, and throughout the entire litigation, Rashidi's estate

---

[3]Linda and George Jr.'s union produced Rashidi and another son, George III. Linda Will and George Jr. divorced long before Rashidi's death. Linda remarried and had a child (Hershel), and George Wheeler, Jr. remarried and had two children (Matthew and Daniel Wheeler).

[4]For the record, we note that Linda was first appointed independent administrator of the Estate and, later, George Jr., represented by Corboy, moved to vacate this appointment as he too sought to be an administrator. These parents agreed to become coadministrators and filed the amended complaint against Northwestern together to reflect this. Cochran and Corboy agreed to act as co-counsel for the Estate, with each to receive one-third of the recovery of the litigation, whether by judgment or settlement, in proportion to the determination of allocation to the heirs of Rashidi's Estate, with Cochran to receive one-third of the funds received by Linda and her sons George III and Hershel, and with Corboy to receive one-third of the funds received by George Jr.

consisted of six heirs: three adults--Linda, George Jr., George III (Rashidi's brother), and three minor children, each of whom was a half-brother of Rashidi--Hershel, Matthew Wheeler and Daniel Wheeler. None of these people filed any individual claim against Northwestern or any other defendant. Northwestern denied liability in the death of Rashidi and filed claims against multiple third-party defendants, who also denied liability.

In the meantime, Linda discharged Cochran and retained another firm to represent her. However, within four months, she discharged that firm and again retained Cochran.

The cause proceeded through four years of discovery, which saw Cochran taking some 24 depositions, the removal of one defendant to bankruptcy court in New Jersey, and remand to the circuit court of Cook County. Ultimately, the cause culminated in an extensive mediation before Cook County Circuit Court Chief Judge Donald O'Connell. In March 2005, the parties reached an understanding that if Linda and George Jr. as coadministrators made a demand of $16 million in exchange for a settlement of all claims, Northwestern would accept the demand and pay this amount. While Corboy and Cochran recommended that the coadministrators make the demand and while George Jr. filed an affidavit stating that he wanted to make the demand, Linda objected. At this point, Linda again discharged Cochran and refused to make the demand upon Northwestern.

Due to this, and because three of the Estate's heirs were minors, the trial court appointed a guardian *ad litem* to represent Hershel, Matthew Wheeler and Daniel Wheeler, and ordered him

---

and his sons Matthew and Daniel Wheeler. Other than this, Linda's contingency agreement with Cochran did not change, but remained the same throughout the litigation.

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

to investigate the proposed settlement to determine if it was appropriate. In July 2005, the guardian *ad litem* submitted his report to the trial court, finding the proposed settlement to be fair and recommending that it be accepted, as this was in the best interests of the minor heirs. In the report, the guardian concluded that not making the demand to Northwestern would be "waste and mismanagement of the only significant asset of the Estate," that it would be "reckless to refuse to make such demand and to subject all of the beneficiaries of the Estate to the risks of trial," and that the "rights of the Minors to recovery in a substantial amount will be endangered by a refusal to make such a demand." Noting that Linda was seeking nonfinancial terms in a settlement, such as the erection of a memorial to Rashidi and counseling for his collegiate peers, the guardian believed that this represented "vindication" which, in light of the proposed monetary settlement, was not as important in relation to the best interests of the minor heirs. The guardian suggested that the only way to effectuate the proposed settlement was for the trial court to direct him to begin proceedings in probate court to remove Linda as coadministrator. However, the guardian later informed the court that, according to case law, sending the cause to probate court was not necessary, as the trial court had the authority to effectuate the settlement under the circumstances.

On August 15, 2005, the trial court adopted the guardian *ad litem*'s report and issued a memorandum opinion and order approving the settlement. The court, relying principally on Ott v. Little Company of Mary Hospital, 273 Ill. App. 3d 563 (1995), noted that it had a duty to prevent the rejection of settlement offers which, in the minors' best interests, should be accepted. Although it sympathized with Linda on the loss of her son, the court made clear that when a suit is brought for survival and wrongful death, it is prosecuted by the estate for the benefit of all the

7

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

heirs, not for the individual benefit of the administrators. Thus, while Linda would have the right to reject a settlement offer of her own accord, "this case does not belong to [her] alone" as "she is not the only heir." The court declared that it had considered all the evidence, including the guardian's report, the circumstances surrounding Rashidi and his death, and the nonfinancial relief sought by Linda that "could never be awarded to her or the estate by *any* jury" (emphasis in original) and which had prompted her to reject the settlement. It determined that the recommended settlement was "a superb result for this litigation" and that there was "no reasonable expectation that a better result could be achieved by further mediation" but, rather, "an immense risk that the proposed settlement amount could be greatly diminished" if the cause proceeded to trial. Ultimately, the court held that it was "in the best interests of the minor heirs *** to approve and accept the proposed settlement," and that no proceedings in the probate court were necessary. Accordingly, the court ordered that the proposed settlement of $16 million be approved and stated that it would execute any required document on Linda's behalf to effectuate it.

Following this, the Estate sent a demand letter in the amount of $16 million to Northwestern for complete settlement of the cause; Northwestern accepted and sent release documents to the Estate with the express term that no finding of liability was or had been made pursuant to the settlement. In September 2005, George Jr. as coadministrator, Thomas Demetrio of Corboy on behalf of the Estate, the guardian *ad litem* on behalf of the minor heirs Hershel, Matthew Wheeler and Daniel Wheeler, and the trial court in the stead of Linda as coadministrator executed the settlement papers; George III neither participated nor objected.

8

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

In light of Linda's disapproval of the settlement and initial actions she took to appeal the matter,[5] Northwestern filed a motion asking the trial court to direct that the settlement amount not be paid until any appeals had been exhausted and that interest on this amount not begin to accrue until that time. In response, Linda filed a motion to vacate the settlement or, alternatively, to compel the payment of the settlement amount plus interest pursuant to the terms of the agreement. Meanwhile, Cochran filed an amended verified petition against Linda for attorney fees in the amount of one-third of her recovery in accordance with the contingency agreement she had signed at the time she retained the firm on behalf of herself, George III and Hershel.

On March 10, 2006, the trial court denied Northwestern's motion and, instead, as requested by Linda in her motion, entered judgment against it for the settlement amount and ordered it to pay the amount into an interest-bearing escrow account, with interest to accrue at 9% until the money was paid therein in full. Northwestern made the payment.

Also on that date, the trial court issued a memorandum opinion and order regarding, among other things,[6] the allocation of the settlement proceeds following a dependency hearing

---

[5]The record reflects that Linda attempted to appeal the settlement at this time, but mistakenly appealed from a nonfinal order of the trial court and, thus, her appeal was dismissed for lack of jurisdiction.

[6]Other items considered by the trial court on this date included the amount of compensation to be awarded to the guardian *ad litem* and to the court-appointed discovery monitor. Ultimately, the court awarded certain amounts as compensation in this regard; no one has objected to these and they are not part of the instant appeal.

9

that had been held earlier, as well as the determination of the amount of fees to be award to Cochran on its petition. In addressing the allocation of the settlement proceeds, the trial court first distinguished between survival and wrongful death causes of action, noting that recovery under the former is distributed in equal shares under intestate rules while recovery under the latter requires a review of the "pecuniary injuries" sustained by each next-of-kin. The court allocated $665,000 as damages for survival and the remainder of $15,335,000 as damages for wrongful death. Accordingly, each of the six heirs of Rashidi's estate was allocated an equal sum of $110,833.33 under the survival claim.

Regarding allocation under the wrongful death claim, the court discussed the losses sustained by the various heirs, as well as the personal circumstances existing at the time of Rashidi's death between him and his heirs, as presented during the dependency hearing. The court distributed the wrongful death proceeds by allocating 70% to Linda, 20% to George Jr., 5% to George III, and 5% to Hershel. Matthew and Daniel Wheeler did not take under this portion of the settlement.

Finally, regarding Cochran's amended verified fee petition, the trial court noted several factors that it was required to consider, including the firm's skill, standing, and time and labor expended; the nature of the cause; the novelty and difficulty of the subject matter; the customary charge for the work performed and the resulting benefits to the client. The trial court found that the petition's itemization of services was sufficient evidence upon which to make an award and concluded, after reviewing several factors, that Cochran had "zealous[ly] prosecut[ed]" the lawsuit, "culminating in mediation and achievement of a settlement that was 'phenomenal.' "

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

Thus, the court held that Cochran was entitled to the full one-third recovery as per its contingency contract with Linda, to be deducted from that portion of the settlement distributed to Linda, George III and Hershel.

Following the order of the court, Northwestern filed a motion to modify the judgment, requesting that the court enter express language therein to make clear that any settlement proceeds and interest would be returned to Northwestern if the settlement were set aside on appeal. Meanwhile, on April 18, 2006, Hershel attained the age of majority. On April 28, 2006, the trial court denied Northwestern's motion without comment, stating later only that "if and when the appeal is over, if it's affirmed, then we're going to come back and calculate the disbursements according to the provisions of the decision ***. If it's reversed, then nobody gets nothing."

ANALYSIS

As noted earlier, there are multiple causes of action on appeal in the instant case, namely, (1) the appeal from the trial court's order directing settlement, which includes causes filed by Linda, George III and Hershel in their individual capacities and Linda in her capacity as coadministrator; (2) Northwestern's cross-appeal from the trial court's April 28, 2006, order denying its motion to modify; and (3) the appeal from the trial court's order of the one-third fee award to Cochran. We will address each, and their accompanying arguments, separately.

I. Trial Court's Order Directing Settlement

Linda, George III and Hershel in their individual capacities, and Linda in her capacity as coadministrator of the Estate, appeal from the trial court's order directing settlement in their causes against Northwestern. Failing to disclose in their opening brief that Hershel was a minor at

11

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

the time of the settlement, they assert that the court misused its power to force settlement on behalf of the Estate's minors (Matthew and Daniel Wheeler) in derogation of their rights as "adult litigants" to seek redress from the courts and to a trial by jury. Attempting to distinguish Ott, as relied upon by the trial court in its order, Linda, George III and Hershel claim that there was no "legitimate basis" for the settlement, calling it "unprecedented" and an "unmistakable violation of Illinois law" mandating reversal and remand for a trial solely on damages. They further argue that once the trial court determined that Matthew and Daniel Wheeler would not take under the wrongful death action, it should have vacated the settlement so that the adult beneficiaries could have pursued their claims against Northwestern as they wished.

Northwestern, for its part, and along with George Jr., counters these contentions with the initial argument that Linda, George III and Hershel, for various reasons, do not have standing. In addition, Northwestern and George Jr. claim that the trial court did have authority to direct that the settlement be accepted and properly exercised that authority, since Linda owed a fiduciary duty to the Estate as coadministrator and since, pursuant to Ott, the trial court had a duty to protect the interests of the minors. Northwestern further clarifies that, even were Linda, George III and Hershel to prevail here, the appropriate remedy would be a vacation of the trial court's judgment and remand for a trial on all issues, as Northwestern's liability was never established.

A. Standing

As a threshold matter, we examine the issue of standing. Linda, George III and Hershel filed appeals in this cause in their individual capacities. However, none of them were parties of record to the underlying cause of action in their individual capacities; rather, they were part of a

12

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

group for whose joint benefit the cause was being brought. That is, the underlying cause involved a wrongful death action, which asserts a claim on behalf of the next-of-kin that death resulted to the decedent from a wrongful act, neglect or default (see Mio v. Alberto-Culver Co., 306 Ill. App. 3d 822, 825 (1999)), and a survival action, which asserts a claim for any action that would otherwise be possessed by the decedent (see Howe v. Clark Equipment Co., 104 Ill. App. 3d 45, 50 (1982)). Illinois law has long made clear that, under both of these, the cause of action must be brought by and in the name of the representative or administrator of the decedent's estate. See, *e.g.*, Miller v. Pinkney, 164 Ill. App. 576 (1911); see Mio, 306 Ill. App. 3d at 826, quoting Pasquale v. Speed Products Engineering, 166 Ill. 2d 337, 361 (1995) ("[t]he personal representative of the decedent 'must bring a single action on behalf of the class beneficiaries to avoid multiple lawsuits' "); accord Pruitt v. Jockisch, 228 Ill. App. 3d 295, 299 (1992); see also Rodgers v. Consolidated R.R. Corp., 136 Ill. App. 3d 191, 193 (1985) (wrongful death action must be brought by and in name of representative of estate), Addison v. Health & Hospital Governing Comm'n, 56 Ill. App. 3d 533, 535 (1977) (same); Wilmere v. Stibolt, 152 Ill. App. 3d 642, 646 (1987) (only administrator or executor of estate can maintain survival action), Howe, 104 Ill. App. 3d at 50 (same), Real v. Kim, 112 Ill. App. 3d 427, 432 (1983) (same). It is to this administrator that the right of action accrues and it is this administrator who possesses the sole right of action or control over the suit; the beneficiaries or heirs have neither a right of action nor any control. See Mio, 306 Ill. App. 3d at 826, citing Rodgers, 136 Ill. App. 3d at 193; accord Szymakowski v. Szymakowski, 185 Ill. App. 3d 746, 748 (1989); Addison, 56 Ill. App. 3d at 535; see also In re Estate of Harnetiaux v. Hartzell, 91 Ill. App. 2d 222, 227 (1968) (the right to

13

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

institute a wrongful death action and to settle it "is with the personal representative of the deceased and not with an heir"), Wilmere, 152 Ill. App. 3d at 646 (same for survival action); see, *e.g.*, Miller, 164 Ill. App. 576. Simply put, wrongful death and survival actions do "not create an individual right in a beneficiary to bring suit." Rodgers, 136 Ill. App. 3d at 193; accord Mio, 306 Ill. App. 3d at 826; Wilmere, 152 Ill. App. 3d at 646.

In the instant case, suit was filed against Northwestern for wrongful death and survival claims by the representatives of Rashidi's estate, namely, Linda and George Jr., as coadministrators. It was to these two people in their coadministrative capacities, then, that these causes of action accrued, and it was these two people in their coadministrative capacities who possessed the sole right of action and control over the cause. Accordingly, Linda, George III and Hershel, as individuals and beneficiaries to Rashidi's estate, had no right to bring suit against Northwestern and, thus, were not parties to the underlying cause because they did not have divisible or independent causes of action. And, ultimately, if they in their individual capacities were not parties to the underlying cause, they in their individual capacities cannot be parties to the instant appeal. Therefore, we find that they do not have standing and we dismiss their appeals. See Rodgers, 136 Ill. App. 3d at 193 (parents of decedent had no right as beneficiaries to bring own wrongful death suit simply because they alleged to suffer injury); Wilmere, 152 Ill. App. 3d at 646 (parents and brothers of decedent as beneficiaries lacked standing to bring survival action).

This leaves Linda in her capacity as coadministrator. We find that, while we must dismiss her claim in her individual capacity along with those of George III and Hershel, she properly filed the instant appeal in her representative capacity of Rashidi's estate. See Mio, 306 Ill. App. 3d at

14

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

826, and <u>Wilmere</u>, 152 Ill. App. 3d at 646 (representatives of deceased's estate have right to file wrongful death and survival actions).

Northwestern argues, however, that Linda lacks standing even in her capacity as coadministrator because of certain actions she took following the court's order of settlement. Northwestern points to that fact that when it moved the court to direct that the settlement amount not be paid until any appeals had been exhausted and that interest not begin to accrue, Linda filed a motion in response to vacate the settlement or, alternatively, to compel the payment of the settlement amount plus interest pursuant to the terms of the agreement. Northwestern claims that the alternative portion of Linda's motion, as well as the trial court's subsequent decision ordering Northwestern to immediately make payment as she asked, demonstrates that Linda acted inconsistently by demanding performance while also objecting to the settlement as a whole and that, accordingly, she waived her right to appeal by "accepting the fruits of the settlement order."

We disagree. As a practical matter, and in contrast to each of the cases Northwestern cites in support of its argument here, Linda never received any portion of the $16 million settlement and never asked the court for access to it. *Cf.* <u>Davis v. Casey</u>, 361 Ill. App. 3d 658 (2005) (party cashed insurance check but also sought appeal); <u>Wilson v. Fullerton</u>, 332 Ark. 111, 964 S.W.2d 208 (1998). To the contrary, she has objected to the settlement amount and terms at every turn of the litigation process. The alternative portion of Linda's motion simply demanded, in response to Northwestern's motion, that payment of the settlement and interest not be delayed in accordance with the trial court's prior decision, which ordered that the $16 million be paid into an interest-bearing escrow account. It is not our view, as Northwestern asserts, that Linda

15

"initially object[ed ] but subsequently embrac[ed]" a ruling. Rather, in her coadministrative capacity, Linda, through her motion, was exercising her fiduciary duties to insure that Rashidi's estate would be protected pending her attempts at appeal, *i.e.*, that Northwestern would be made to pay the money it owed as agreed in the settlement and as ordered by the court and that interest would accrue thereon for the Estate's beneficiaries were she to be unsuccessful in future challenges to the validity of the settlement. See, *e.g.*, In re Estate of Lashmett, 369 Ill. App. 3d 1013 (2007) (representative of estate has fiduciary duties to beneficiaries); accord In re Estate of Lis, 365 Ill. App. 3d 1 (2006) (administrator must act in best interests of estate). Accordingly, we find that Linda has standing as a coadministrator of Rashidi's estate to assert the instant appeal.

B. Ott and the Trial Court's Authority to Direct Settlement

We now turn to the merits of Linda's appeal. As noted earlier, the essence of her claim is that the trial court did not have the power to accept the settlement and execute the settlement documents in her name; she asserts that the court's actions here erroneously forced settlement in derogation of the rights of the "adult litigants," namely, her, George III and Hershel, to seek redress and to a trial by jury. We wholeheartedly disagree, finding that, for various reasons, the trial court did indeed have the power to accept and execute the settlement between Rashidi's estate and Northwestern and that it exercised this power properly in light of the circumstances presented in the instant cause.

First, we again note the unique relationship involving Linda and George Jr. as coadministrators, the Estate, and the trial court here. Linda and George Jr. had a duty to perform the tasks associated with administering the Estate; *i.e.*, they were to carry out the wishes of the

decedent and, more importantly, to act in the best interest of the Estate which they together represented. See Lis, 365 Ill. App. 3d at 10. This required them, as administrators, to uphold their fiduciary relationship to the Estate's beneficiaries and to act in the utmost good faith to protect their interests, exercising at the very least that degree of skill and diligence any reasonably prudent person would devote to her own personal affairs. See Johnson v. Provena St. Therese Medical Center, 334 Ill. App. 3d 581, 590 (2002); In re Estate of Heater, 266 Ill. App. 3d 452, 455 (1994). Ultimately, Linda and George Jr.'s function as administrators was to administer the assets of Rashidi's estate to the end that any debts or obligations he had were paid and all his beneficiaries received their just and proper benefits in an "orderly and expeditious manner." In re Estate of Greenberg, 15 Ill. App. 2d 414, 424 (1957).

In addition to the obligations the administrator owes to the estate's beneficiaries, the administrator has legal duties to the court. See Lashmett, 369 Ill. App. 3d at 1017. This is because courts have the responsibility to oversee the administration of estates and to approve the actions of an estate's administrators. See In re Estate of Wolfner, 58 Ill. App. 2d 423, 430 (1965). Thus, the powers of an administrator are derivative of the powers of a court, so that the administrator is essentially acting as an agent of the court pursuant to its control and direction. See Lashmett, 369 Ill. App. 3d at 1017. Accordingly, the administrator's conduct is subject to review by the court. See Greenberg, 15 Ill. App. 2d at 424 (a court is to review any conduct of administrator "detrimental to [her] end" of paying estate's debts and distributing benefits orderly and expeditiously).

As a personal representative of Rashidi's estate working not on her personal behalf but on

17

that of others, Linda, then, was an agent of the court subject to the court's control and direction. She was to work in the best interests of Rashidi's estate and use the utmost good faith to protect the interests of his six beneficiaries. Principally, Linda's duties as coadministrator were to pay off Rashidi's debts (if any) and to insure that his beneficiaries received their just benefits from his estate quickly.

Clearly, Linda's duties did not include an attempt to satisfy her own personal interests; yet, that is precisely what occurred here and what prompted the trial court to intervene. Linda's dissatisfaction with the settlement offered had nothing to do with the adequacy of the amount suggested by Northwestern as a demand and ordered by the trial court. Rather, Linda refused to accept the $16 million settlement because it did not include non-monetary items which she, alone, insisted upon, particularly, that Northwestern erect memorials to her son and that it offer counseling to all those who were present when he died. Yet, these non-monetary items could never be ordered by any court, as the purpose of wrongful death and survival actions is to provide beneficiaries with the pecuniary benefits they would have received from the deceased had his life continued, not with non-monetary items. See Johnson, 334 Ill. App. 3d at 592; see also Williams v. Manchester, 372 Ill. App. 3d 211, 222-23 (2007) (purpose of wrongful death claim is to compensate for pecuniary losses sustained due to death); Patch v. Glover, 248 Ill. App. 3d 562, 573 (1993) (recoverable damages under survival action are "those compensatory damages which the decedent would have been entitled to had he prosecuted the claim"). As the trial court noted, this was not Linda's case alone; were it, her desires to reject the settlement in favor of what she herself wanted would be her prerogative and her legal right, no matter what the risk. But the

cause belonged to the Estate, not to Linda. Her conduct of continuing to insist on these non-monetary items, which were otherwise unobtainable via any court proceeding, was in direct opposition to coadministrator George Jr.'s desire to accept the settlement and was preventing Rashidi's beneficiaries from expeditiously receiving their entitled benefits. Accordingly, it was proper for the trial court, which had the ultimate authority to oversee Rashidi's estate, to review Linda's actions as administrator. See Lashmett, 369 Ill. App. 3d at 1017; Wolfner, 58 Ill. App. 2d at 430; accord Greenberg, 15 Ill. App. 2d at 424.

Second, and perhaps even more significant than these relational duties, the trial court had the power to accept the settlement and execute the documents here because minors were involved and affected by the outcome of the settlement proceedings.

It is well established that the rights of minors are to be carefully guarded. See Villalobos v. Cicero School District 99, 362 Ill. App. 3d 704, 712 (2005); Ott, 273 Ill. App. 3d at 570 (this is the public policy of Illinois). When involved in any sort of litigation, a minor is deemed a ward of the court and the court "has a duty and broad discretion to protect the minor's interests." Ott, 273 Ill. App. 3d at 570-71; accord In re Tyrese J., No. 1-07-1078, slip op. at 25 (September 21, 2007) ("[w]e hold that the circuit court has an obligation to intervene when a minor's representative fails to protect his interests"); First National Bank of LaGrange v. Lowrey, 375 Ill. App. 3d 181, 204 (2007). This includes the duty to approve or reject any settlement agreement proposed on the minor's behalf. See LaGrange, 375 Ill. App. 3d at 204; Ott, 273 Ill. App. 3d at 571. Neither a guardian of the minor's estate, nor his next friend or court-appointed guardian, nor even his parents have any legal right to settle the minor's cause of action unless and until the court

19

reviews the settlement and approves it. See Ott, 273 Ill. App. 3d at 571 (none of these has any legal right to settle minor's cause; court review and approval of a settlement reached, even by parent, is "mandatory"); accord Villalobos, 362 Ill. App. 3d at 712; Smith v. Smith, 358 Ill. App. 3d 790, 793 (2005); Wreglesworth v. Arctco, Inc., 316 Ill. App. 3d 1023, 1027 (2000).

When the court believes settlement to be in the minor's best interest, it may order a guardian or conservator to effectuate the settlement. See LaGrange, 375 Ill. App. 3d at 204; Ott, 273 Ill. App. 3d at 571. If that person refuses to carry out the settlement in contradiction to the court's determination, the court may appoint a guardian *ad litem* to settle the case on the minor's behalf. See Ott, 273 Ill. App. 3d at 571-73, citing Davis v. Mather, 309 Ill. 284 (1923) (appointing such when conservatrix of estate refused to follow court's best interest determination for involved minor), and Lyons v. Whittington, 109 Ill. App. 3d 197, 202 (1982) (holding that courts have "authority to order the compromise of litigation involving minors when settlement is in the best interest of the minor"). Thus, concomitant with the general policy favoring compromise and settlement is the principle that, while any adult plaintiff can voluntarily reject a settlement no matter how advantageous, the same is not true in the case of minors. See Ott, 273 Ill. App. 3d at 573. Rather, when a minor is involved, "the *** court has a duty to prevent the rejection of settlement offers which in the minor's best interests should be accepted" and, should this impede upon the minor's guardian or parents' ability to control the direction of the case, then so be it. Ott, 273 Ill. App. 3d at 573.

We further clarify that the court's authority to perform its duty in this regard extends only to those cases where the evidence demonstrates that compromise is in the best interest of the

20

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

minor. See <u>Ott</u>, 273 Ill. App. 3d at 573. Accordingly, the court is permitted to review the parties' positions and the wishes of the minor's parents, analyze their potential strengths and weaknesses, and estimate probabilities of liability and damage awards. See <u>LaGrange</u>, 375 Ill. App. 3d at 204; <u>Ott</u>, 273 Ill. App. 3d at 573. Ultimately, "[w]hen the court has made such an examination and has determined that settlement, rather than the uncertainties of trial, is in the best interest of the minor, and when that determination is supported by the record, it will be affirmed." <u>Ott</u>, 273 Ill. App. 3d at 574, citing <u>Matthews v. Doner</u>, 292 Ill. 592 (1920) (appellate court will affirm such finding), and <u>Hudson v. Thies</u>, 35 Ill. App. 2d 189 (1962) (decision of trial court to approve such settlement lies in its discretion and will not be overturned absent abuse).

Contrary to Linda's attempts to distinguish <u>Ott</u>, we find that this case, which the trial court here relied upon in making its decision to effectuate the instant settlement, is on point with the circumstances presented and that its holding is directly applicable. In <u>Ott</u>, the parents of a minor filed a medical malpractice action on her behalf as the coguardians of her estate. They demanded $4.5 million to settle the suit and rejected all other offers made by the defendants. During a pre-trial conference to initiate settlement, the trial court suggested a $2 million present cash value settlement. The defendants agreed to this, offering a structured settlement to the estate that would yield a minimum of approximately $5.5 million and a maximum of $21 million, if the minor lived her normal life expectancy. The court met with the parents multiple times to explain its belief that this was a good settlement offer for the estate in light of the risks of trial, but the parents expressly refused to accept the offer. The court appointed a guardian *ad litem* on behalf of the minor, with instructions to review the discovery materials submitted in the cause and the

21

proposed offer. In his report, the guardian *ad litem* concluded that, due to the risks of trial and the gamble they presented, acceptance of the offer was in the best interest of the minor. The court adopted the report, found the settlement to be in the best interest of the minor, and ordered the guardian *ad litem* to execute all necessary documents to settle the case, over the parents' objections. See Ott, 273 Ill. App. 3d at 565-70.

On appeal, the parents argued, in part, that the trial court improperly coerced settlement of the cause by removing control of the minor's case from their control as parents and guardians of the estate and, thus, deprived them of their right to trial. The Ott court held that the trial court's determination that the settlement as offered was in the best interest of the minor and its action of executing that settlement over the objection of the parents and guardians of the estate were proper exercises of its powers. See Ott, 273 Ill. App. 3d at 574. In affirming the settlement as ordered, the Ott court reviewed the same principles we outlined above, specifically that, in the case of a minor, the trial court has a duty to prevent the rejection of settlement offers which in the minor's best interest should be accepted, regardless of whether this impedes upon the minor's parents or guardian of the estate's ability to control the cause and its resolution. See Ott, 273 Ill. App. 3d at 573. The Ott court then analyzed the evidence presented to determine whether it supported the trial court's conclusion that the settlement was in the minor's best interest. It noted that the court had reviewed all the parties' position, including the wishes of the parents, who had been appointed guardians of the estate, the guardian *ad litem*'s report, important legal factors such as proof of causation, average jury verdicts in similar cases and the admitted sincerity of the parents to obtain the most compensation possible for the minor. See Ott, 273 Ill. App. 3d at 574.

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

In light of the trial court's thorough examination, the Ott court concluded that its ultimate determination and actions in accepting the settlement on the estate's behalf were not an abuse of discretion. See Ott, 273 Ill. App. 3d at 574.

Although the instant case involves wrongful death and survival actions rather than a medical malpractice action as in Ott, we find that it mirrors that case and merits the same result. At the time Northwestern proposed the settlement demand to the Estate, three of six of Rashidi's beneficiaries were minors: Hershel (who was a minor at the time of the settlement offer and until it was executed and allocated), Matthew and Daniel. Accordingly, they were wards of the trial court and court had a duty and the broad discretion to protect their interests in the Estate and the resolution of this lawsuit. Neither Linda as the mother of Hershel, nor George Jr. as the father of Matthew and Daniel, nor these two in their capacities as coadministrators of the Estate or guardians of these minors, had the legal right to control Hershel, Matthew or Daniel's cause of action against Northwestern or its resolution; rather, this was subject to mandatory review by the trial court.

Once the settlement offer was made here, the trial court ordered that a guardian *ad litem* be assigned on behalf of the three minors to review whether settlement would be in their best interest. The guardian determined that this was indeed the case and submitted a written report to the court which examined the discovery evidence, conferences with the parties, jury verdicts in similar cases, the mediation conducted by Judge O'Connell and the risks of trial, concluding that refusal of the proposed settlement amounted to waste and mismanagement of Rashidi's estate. In addition to adopting the guardian's report, the trial court considered several other factors involved

23

in this cause. For example, the court examined the decedent and the circumstances surrounding his death, noting Rashidi's age, the fact that he left no dependents, his employment status, and his potential future earnings. The court had also been presented with the discovery evidence, which it investigated of its own accord. The court weighed the risks of trial, commenting that there was no expectation that a better result could be achieved at trial but, rather, that it was more likely that the proposed settlement amount could be greatly diminished if the case were tried, either by a contrary or decreased verdict and/or by the additional costs that the Estate would incur. And, while it sympathized greatly upon the loss of her son, the court could not ignore that Linda's objection to the settlement rested on her desire to obtain non-monetary items that no trial verdict could award her and that all those involved in procuring the settlement, including coadministrator George Jr., his and Linda's attorneys, Judge O'Connell and the guardian *ad litem*, felt it to be proper.

Based on all this, we find that the trial court not only had the power to accept the settlement and execute all pertinent documents, but that it did so properly and without any abuse of its discretion. Linda, as the Estate's representative, refused to effectuate the settlement in direct contradiction to the trial court's reasoned determination that the settlement was in the best interest of the minor beneficiaries she had been entrusted to represent. While she as an adult plaintiff would otherwise have the ability to reject any settlement no matter how advantageous to her in an individual cause of action, this was not the case here, where we have already concluded she did not have an individual cause. Rather, she stood in this cause as a coadministrator and, as such, the trial court here had a duty to prevent the rejection of this settlement, which it determined

24

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

to be in the best interest of the minors, regardless of whether it impeded her ability to control her minor child Hershel or to direct the resolution of the case as coadministrator of Rashidi's estate.[7] See Ott, 273 Ill. App. 3d at 573.

Linda argues, in reliance upon the guardian *ad litem*'s written report, that the trial court failed to remove her as coadministrator in compliance with the Probate Act of 1985 (Act) (755 ILCS 5/1-1 *et seq.* (West 2006)) and that, because of this, the court's acceptance of the settlement should be reversed. However, this argument has no merit. While Linda provides us with general rules regarding the method of removal of the representative of an estate pursuant to the Act, she fails to submit any case law to support her contention that this method was required here. To the contrary, Linda was never removed as coadministrator of Rashidi's estate, and the trial court made clear that it had no intention to ever remove her as such. Rather, the court was exercising its

---

[7]We note for the record that Linda filed a motion with this court on January 10, 2007, to cite as supplemental authority J.H. v. Ada S. McKinley Community Services, Inc., 369 Ill. App. 3d 803 (2006), for the propositions that there was no legitimate basis for the trial court's action and that she and her sons were deprived of their rights. However, following the filing of this motion, Linda failed to cite J.H. anywhere in her argument contained in her briefs on appeal. We mention here, for the purpose of maintaining a complete record, that we have reviewed J.H., which held that a trial court's order appointing a guardian *ad litem* for competent adult plaintiffs pursuing their own cause of action was void. See J.H., 369 Ill. App. 3d at 819. J.H. has no relevance to the instant cause, as the guardian *ad litem* here was appointed only on behalf of the minor beneficiaries and not on that of any adult involved herein.

25

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

powers as described in Ott to secure the settlement since minors were involved; other than accepting the settlement as it was authorized to do, the trial court did not interfere with Linda's status as coadministrator or her ability to care for and manage the Estate, which she in fact retained. As we have discussed, Linda's rights to represent and appear on behalf of the Estate were not exclusive, as her powers as coadministrator were derivative of the powers of the court. See Lashmett, 369 Ill. App. 3d at 1017. Moreover, removal of Linda as coadministrator was not a prerequisite for the trial court to exercise its powers to find that the settlement was fair for the minors; rather, this is an inherent power and duty of the trial court when minors are involved in litigation. See, *e.g.*, Ott, 273 Ill. App. 3d at 570-74. Even the guardian *ad litem* recognized this when, while commenting on his written report in open court, he stated that his original suggestion that the cause be remanded to probate court for Linda's removal "was a cumbersome way" for the court to exercise the powers it so clearly had to control the cause here. Thus, as Linda was not removed, and as there was no need for such removal in order for the trial court to accept and effectuate the settlement, the Probate Act and its provisions cited by Linda are inapplicable to the instant cause.

Linda further argues that, "[o]nce the trial court determined that no minors' interest were implicated in the [w]rongful [d]eath action," it should have vacated the settlement so that the "adult" beneficiaries could have pursued their own claims. However, even as Linda admits, she provides us with no case law to support this argument. In addition, Linda's repeated insistence that Hershel was an "adult beneficiary" is wholly incorrect, as is her contention that because the only minors--Matthew and Daniel--shared in that portion of the settlement allocated for the

26

survival claim but did not receive any portion of the wrongful death proceeds, the court erred in accepting the settlement. First, there was never any demand made here by any party or anyone represented by the Estate that the survival and wrongful death actions be severed. To the contrary, Linda and George Jr. brought these actions together and they were coadministrators of the Estate regarding both of the claims, and the six beneficiaries were beneficiaries under both of the claims. That Matthew and Daniel were later determined, after settlement and during the dependency hearing, not to be "dependent enough" upon Rashidi to share in the proceeds allocated under the wrongful death claim, is irrelevant--they still had a viable interest in both claims which, again, had been brought together and on their behalf as beneficiaries. Second, even were this not the case, at all times relevant to the settlement of this cause, from the moment the parties arrived at the $16 million demand offer to the moment the court issued its final order on distribution of that amount and during all the moments in between (when the court appointed the guardian *ad litem*, when the guardian submitted his report, when the court accepted the settlement, and when the court conducted the dependency hearing), Hershel was a minor. Thus, it cannot be disputed that there was a minor whose interests here straddled both the survival and the wrongful death claims, as Hershel ultimately took under both of these. Therefore, the trial court had a duty to protect the minors' interests as implicated under both portions of the settlement.

Accordingly, and in conjunction with our thorough review of the record and the circumstances presented here, we hold that the trial court had the power to accept and effectuate the settlement on behalf of Linda as coadministrator of Rashidi's estate and that it did so properly, without any error or abuse of discretion.

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

### II. Northwestern's Cross-Appeal

As noted earlier, Northwestern has filed a cross-appeal here, contending that the trial court erred in failing to include certain express language in its judgment regarding the return of the settlement proceeds to it if the settlement is set aside. That is, Northwestern claims that the trial court's March 10, 2006, order should have included express language that any settlement proceeds Northwestern had paid into escrow should be returned to it if the settlement were reversed on appeal and, thus, that its motion to this effect should not have been denied by the court in its April 28, 2006, order.

We recognize Northwestern's cross-appeal and its desire that were we to reverse or vacate the judgment of the trial court accepting and effectuating the settlement, we remand this cause with instructions to order the return of the settlement proceeds, with accrued interest, to it. However, having determined that the trial court properly accepted and effectuated the settlement, and thereby affirming this portion of the cause, Northwestern's cross-appeal is rendered moot and we find it unnecessary to consider the merits of that claim. See Kurczak v. Cornwell, 359 Ill. App. 3d 1051, 1062 (2005), citing Fine Arts Distributors v. Hilton Hotel Corp., 89 Ill. App. 3d 881, 885 (1980) (in affirming trial court's decision, cross-appeal was rendered moot and it was not necessary to consider its merits); accord Forest Preserve District of Du Page County v. Miller, 339 Ill. App. 3d 244, 257 (2003) (based on resolution of the plaintiff's appeal, issues that the defendant raised in cross-appeal are moot and need not be addressed); Mann v. Upjohn Co., 324 Ill. App. 3d 367, 379 (2001).[8]

---

[8]We also find to be moot one other argument presented by Northwestern, though we wish

28

### III. Cochran's Fee Award

Finally, Linda appeals from the trial court's order of a one-third attorney fee award to Cochran to be disbursed from the portion of the settlement she, George III and Hershel received.[9] She challenges this determination on two grounds, insisting first that Cochran was not entitled to a "full one-third" amount and to award the firm such a fee is tantamount to champerty, and second, that Cochran's fee petition was legally and factually insufficient in that it listed only general tasks and time spent on the cause with no accompanying descriptions to assess the fees' reasonableness, in contradiction to Kaiser v. MEPC American Properties, Inc., 164 Ill. App. 3d 978 (1987). We disagree on both grounds.

Initially, we note that while Linda formats her appellate contentions regarding the issue of

_____

to mention it for the record. Northwestern aptly points out in its brief on appeal that Linda asks, on more than one occasion, that we remand this cause to the trial court for a trial on damages only. Northwestern claims that, were remand to be appropriate, it must be for a trial on all issues including liability, since there has been no resolution of fault here and since the express terms of the settlement agreement explicitly denied liability. Yet, because we have already affirmed the settlement herein and, thus, will not remand the cause, we need not address the merits of this argument.

[9] We note that this portion of the appeal originates via Linda as coadministrator and via Linda, George III and Hershel in their individual capacities. Having found that these parties do not have standing in their individual capacities, but that Linda does as coadministrator, we address this portion of the appeal accordingly.

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

attorney fees in this manner, we choose to address her second contention first. Although she labels this assertion regarding the legal and factual sufficiency of Cochran's fee petition as the "merits" of the issue, it actually involves threshold procedural concerns that should be discussed first, with the propriety of the amount awarded accounting for the true merits of the issue.

Accordingly, turning first to the sufficiency of Cochran's fee petition, we note that Linda rests on Kaiser, which she claims is the "seminal authority" and " 'bedrock' for dealing with issues relating to the imposition of attorney[] fees." Excising a portion of that case, as well as of Mars v. Priester, 205 Ill. App. 3d 1060 (1990), which relies on Kaiser, Linda points out the holdings of these, namely, that a party seeking fees has the burden of presenting sufficient evidence from which a trial court can determine their reasonableness, and that to justify a fee, more than a mere compilation of hours multiplied by a fixed hourly rate or bills issued to the client must be presented in order for the court to make such a determination. See Kaiser, 164 Ill. App. 3d at 984 (petition must specify the services performed, by whom they were performed, the time expended and the hourly rate charged); accord Mars, 205 Ill. App. 3d at 1065 ("[i]t is incumbent upon the petitioner to present detailed records" containing facts and computations upon which charges are predicated).

However, while we wholeheartedly agree with Linda that these are the holdings of Kaiser and Mars, we cannot agree with her that, based on these, Cochran's fee petition in the instant case was insufficient. This is because, pursuant to Johns v. Klecan, 198 Ill. App. 3d 1013 (1990), it is markedly clear that those cases are wholly inapposite from the instant one.

In Johns, the clients, who were involved in a suit arising from an automobile accident, had

30

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

retained a law firm to represent them pursuant to a contingent fee agreement. The firm's attorneys performed various services for these clients over several months, which included conducting interviews, corresponding with insurers and physicians, participating in negotiations and filing a complaint. Later, the clients discharged the firm and retained a new firm to prosecute their claim, which resulted in a settlement. The original firm sought attorney fees for its work under the contingent fee agreement, but was denied by the trial court which, relying specifically on Kaiser, held that the firm's evidence was inadequate to determine a reasonable fee since the firm did not provide enough detail surrounding the work performed or the time expended on the cause. See Johns, 198 Ill. App. 3d at 1018.

On appeal, however, the reviewing court reversed the trial court's decision, directly addressing Kaiser's holding. See Johns, 198 Ill. App. 3d at 1022-23. The Johns court noted that the similarity of the case under review to Kaiser began and ended with the calculation of reasonable attorney fees. See Johns, 198 Ill. App. 3d at 1023. Whereas the fee sought in Johns originated from the firm's request based upon its contingent fee agreement with the clients, the fee sought in Kaiser originated from a lease contract in which the parties had agreed that the lessees would pay the lessor's legal fees, which were based on an hourly fee rate. See Johns, 198 Ill. App. 3d at 1022-23 (distinguishing Kaiser on this basis). The Johns court reasoned that, because the attorney in Kaiser sought payment of his fee pursuant to a contract that outlined payment on an hourly basis, and because only reasonable fees could be allowed, a determination by the trial court required detailed records of facts and computations regarding the attorney's work; without these, such a determination could not be made. See Johns, 198 Ill. App. 3d at 1019. The public policy

31

supporting this lay in the consideration that without requiring attorneys under contract to provide detailed records of their work and time, some of them--particularly those who did little or no work prior to discharge--would be able to recover full contract fees, thereby raising the possibility of excessive fees. See Johns, 198 Ill. App. 3d at 1019.

The difference in Johns, however, was that the firm was seeking recovery of fees pursuant to a contingent fee arrangement with the client or a *quantum meruit* recovery of legal fees. See Johns, 198 Ill. App. 3d at 1018. This proved key; the Johns court explained that, since time and labor expended in a case is only one of several factors to be considered in determining reasonable attorney fees under the doctrine of *quantum meruit*, then "the failure to account for the time spent on a case in exacting detail" should not preclude the recovery of fees. Johns, 198 Ill. App. 3d at 1019. The Johns court continued by noting that the policy concern expressed in Kaiser regarding excessive fees did not play a role in contingent fee situations because trial courts "can adequately guard against that possibility without requiring that contingent fee attorneys account for the time they spend on a case with the same specificity and exactitude of hourly fee attorneys." Johns, 198 Ill. App. 3d at 1019. Thus, while Kaiser was still viable law in those situations where attorney fees were to be calculated on an hourly basis according to a noncontingency contract, the fact that Kaiser "did not involve either a contingent fee arrangement or a request for a *quantum meruit* recovery of fees in a contingent fee setting" rendered it to be "so inapposite *** as to be inapplicable" to what occurred in Johns. Johns, 198 Ill. App. 3d at 1023.

The instant cause mirrors Johns. Cochran's request for attorney fees here originates from its contingent fee agreement with Linda, which she signed on her behalf and that of George III

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

and Hershel. Contrary to Linda's assertion on appeal, then, this cause is not like Kaiser, or Mars

for that matter, which both involved hourly rates and fee contracts but did not involve contingent

fee agreements. *Cf.* Kaiser, 164 Ill. App. 3d 978; Mars, 205 Ill. App. 3d at 1060 (attorney fees

were contractual, not contingent). Therefore, her argument that Cochran's award should be

reversed because its petition was insufficient due to a lack of detail regarding the work perform

and time expended has no merit. Rather, as the holding of Johns makes clear, Cochran was not

required to present such detail to establish its right to a reasonable fee since it based its action on

its contingent fee agreement and a claim of *quantum meruit.* See Johns, 198 Ill. App. 3d at 1024-

25 ("we hold that an attorney working on a contingency basis *** is not required to present

evidence as detailed as that required in *Kaiser* to establish his right to a reasonable fee under

*quantum meruit* in case of discharge"); accord Anderson v. Anchor Organization for Health

Maintenance, 274 Ill. App. 3d 1001, 1008 (1995) (fact that attorney did not maintain detailed

time records did not preclude right to recovery asserted under *quantum meruit* pursuant to

contingent fee agreement; rather, records presented sufficient evidence from which a trial court

could determine a reasonable fee for services).

Even were Johns and its progeny somehow distinguishable here and Kaiser were to be

followed as Linda insists, we nevertheless would conclude that her contention that Cochran's fee

petition is legally and factually insufficient is simply incorrect. As we noted above, Kaiser holds

that, to justify a fee, a party must present more than a mere compilation of hours multiplied by a

fixed hourly rate or bills issued; rather, the party must specify the services performed, by whom

they were performed, the time expended and the hourly rate charged in order for the trial court to

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

make a determination regarding reasonableness. See Kaiser, 164 Ill. App. 3d at 984. Having reviewed Cochran's amended fee petition contained in the record, we conclude, contrary to Linda's assertion, that Cochran meets the requirements announced in Kaiser. The documents Cochran attached to its petition are quite lengthy and outline exactly the tasks performed during the litigation, as well as the dates they took place, the attorneys who performed them, and how much time they expended on each task. Accordingly, we find that, even were we held to the standard of Kaiser,[10] Cochran presented more than sufficient evidence upon which the trial court could make a determination of the reasonableness of its fees.

Having so concluded, we turn now to Linda's assertion that Cochran was not entitled to the award it received, namely, a one-third fee amount. She claims that she had an absolute right to terminate Cochran, which she did in response to her disagreement with the firm's suggestion that she accept the proposed settlement. She further asserts that the trial court's order requiring her to pay Cochran a one-third amount rendered her right to terminate meaningless and conferred upon Cochran "superior control" and proprietary rights over her cause of action, tantamount to champerty. Again, we disagree.

Linda is correct that, under Illinois law, a client has the right to terminate her attorney at any time, with or without cause. See In re Estate of Callahan, 144 Ill. 2d 32, 37 (1991); Rhoades v. Norfolk & Western Ry. Co., 78 Ill. 2d 217, 227-28 (1979); Wegner v. Arnold, 305 Ill. App. 3d

_____

[10]However, to make explicitly clear, we reiterate that the rule announced in Johns dealing with contingent fee agreements, and not that announced in Kaiser which deals with hourly contract rates, controls here.

34

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

689, 693 (1999). When this occurs, as here, in a contingent fee agreement setting, the agreement becomes void and the contingency term is no longer enforceable. See Callahan, 144 Ill. 2d at 40; accord In re Estate of Horwitz, 371 Ill. App. 3d 625, 631 (2007) (agreement ceases to exist and contingency term is not longer operative); Wegner, 305 Ill. App. 3d at 693.

However, a discharged attorney *is* entitled to be paid a reasonable fee on a *quantum meruit* basis for services rendered before termination. See Rhoades, 78 Ill. 2d at 230; accord Horwitz, 371 Ill. App. 3d at 631; Wegner, 305 Ill. App. 3d at 693; see, *e.g.*, Callahan, 144 Ill. 2d 32 (cause of action for *quantum meruit* accrues in favor of attorney engaged on contingency fee basis immediately upon discharge and prior to the resolution of the lawsuit); In re Estate of Simmons, 362 Ill. App. 3d 944, 947 (2005) (this recognizes that it is possible for client to receive legal services yet not be enriched in tangible way). As the term suggests, under this theory, a trial court is literally to award the attorney " ' "as much as he deserves." ' " Wegner, 305 Ill. App. 3d at 693, quoting Kannewurf v. Johns, 260 Ill. App. 3d 66, 74 (1994), quoting Lee v. Ingalls Memorial Hospital, 232 Ill. App. 3d 475, 478 (1992); see Simmons, 362 Ill. App. 3d at 947 (proceeding in this manner protects the client's right to control his cause of action while affording the attorney the right to be paid for services rendered). In making its determination, the trial court should assess several factors, including the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the ususal and customary charge for that type of work in the community, and the benefits resulting to the client. See Callahan, 144 Ill. 2d at 44; accord Horwitz, 371 Ill. App. 3d at 632, Wegner, 305 Ill. App. 3d at 693, Johns, 198 Ill. App. 3d

35

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

at 1020 (all citing same factors for consideration). In those cases where an attorney who has done much work is fired immediately before settlement is reached, these factors involved in determining a reasonable fee "would justify a finding that the entire contract fee is the reasonable value of services rendered." Wegner, 305 Ill. App. 3d at 693; see also Rhoades, 78 Ill. 2d at 228.

Since this evaluation rests with the trial court, it has broad discretion in its determination, particularly because of its close observation of the attorney's work and its deeper understanding of the skill and time required in the underlying case. See Wegner, 305 Ill. App. 3d at 693. While the burden of proof is upon the attorney to establish the value of his services (Callahan, 144 Ill. 2d at 44), the trial court "is not limited to the evidence presented in arriving at a reasonable fee but may also use the knowledge it has acquired in the discharge of professional duties to value legal services rendered" (Johns, 198 Ill. App. 3d at 1022). Ultimately, the trial court's decision will not be reversed on appeal unless it has abused its discretion. See Callahan, 144 Ill. 2d at 44.

In the instant cause, the trial court noted that, with the exception of a period of time when the matter was removed to New Jersey for a bankruptcy hearing and to another Cook County court for administrative dealings, it had "the responsibility for this case during its entire pendency." It observed that the Cochran attorneys who had worked on it are "well known" and have "well established reputations and standing in the legal community." The court continued by describing that the work they performed and the rates for their services were "more than appropriate," particularly "given their tireless and devoted representation" to Linda, George III and Hershel. It explained that the cause against Northwestern was "arduous," that multiple issues were involved and that the proceedings had been complex. The court concluded its analysis by

36

Nos. 1-06-1566, 1-06-1642 and 1-06-1643 (cons.)

commenting that Cochran provided "stellar services," as exhibited by the benefit Linda, George III and Hershel received, with Cochran's "zealous prosecution of this lawsuit[] culminating in *** [the] achievement of a settlement" that was " 'phenomenal.' "  From all this, the court determined that the reasonable value for Cochran's services amounted to the entire one-third contracted fee.

Based on our review of the record, we find no abuse of trial court's discretion.  While it undoubtedly was Linda's prerogative to terminate Cochran (for the second time) in June 2005, the circumstances presented here clearly support the court's conclusion that Cochran merited one-third of the amount received by Linda, George III and Hershel in fees, according to the contingency agreement, for the services it rendered during the time it represented them in the underlying lawsuit against Northwestern.  First, as the trial court noted, save for the brief removal to other jurisdictions, it had primary responsibility and direct supervision of the case for the clear majority of the litigation period.  Therefore, the trial court had a wealth of knowledge regarding several of the factors outlined above, including Cochran's skill and standing; the nature, novelty and difficulty of the cause; and the benefit obtained by Linda, George III and Hershel from Cochran's work--all of which the trial court addressed in its decision.

In addition to this, we note several facts that support the award.  Linda retained Cochran in August 2001, whereupon Cochran filed a complaint at law against Northwestern.  Cochran then worked with Corboy and George Jr., who wanted to be a coadministrator of Rashidi's estate, to establish this relationship, arrive at an agreement regarding any future monetary outcome, and file an amended complaint on Linda's (and George Jr.'s) behalf.  Linda then discharged Cochran in November 2001, but rehired the firm only approximately five months later in April 2002.  From

37

this time until the demand offer was suggested by Northwestern in March 2005, Cochran took some 24 depositions, attended the bankruptcy proceedings in New Jersey, negotiated settlements with several third-party defendants, prepared a mediation presentation, and presented this during the extensive mediation proceedings that took place before Cook County Circuit Court Chief Judge Donald O'Connell. As evidenced by Cochran's detailed fee petition, the firm spent approximately 1,965.8 hours on the underlying cause over a 3½-year period, involving the time of 5 attorneys (including Johnnie Cochran himself), 2 paralegals and 3 law clerks.

Moreover, following Northwestern's proposal, Cochran reviewed the settlement demand, determined it was advantageous to Linda, George III and Hershel, and suggested they accept it. It was not until three months after this proposal, and only two months before the trial court ordered it to be accepted, that Linda terminated Cochran for the second time in June 2005 upon her disagreement with the firm's suggestion. Significantly, Linda did not retain new counsel after she terminated Cochran and before the settlement was entered,[11] and nothing changed regarding the demand after the termination. That is, the settlement ordered was exactly the amount which Cochran negotiated: $16 million. Also, mediator O'Connell, coadministrator George Jr., Estate co-counsel Corboy, the guardian *ad litem* and the trial court all affirmatively declared at several points during the litigation process that the settlement reached was, at the very least, favorable for Linda. While Linda was displeased because the award would not include the non-monetary items

_____

[11]Following this discharge of Cochran, the trial court afforded Linda time to find new counsel. Linda located an attorney who, after reviewing the record and the settlement proposal, declined to represent her.

she sought, such as memorials to her son and counseling to his peers (the majority of whom, incidentally, most likely were no longer attending Northwestern after four years following Rashidi's death), and she had every right to discharge Cochran, this did not change the fact that Cochran performed a wealth of professional duties for which it should be reasonably compensated.

Therefore, it is clear to us that Linda was enriched by Cochran's legal services and, under the circumstances presented here, we will not reverse the trial court's justified determination that Cochran merited the entire contract fee of one-third as the reasonable value of its services rendered. See Wegner, 305 Ill. App. 3d at 693 (entire contract fee justified where attorney has done much work and is fired immediately before settlement is concluded); see, *e.g.*, Rhoades, 78 Ill. 2d at 228.

## CONCLUSION

Accordingly, for all the foregoing reasons, we dismiss the appeal with respect to Linda, George III and Hershel in their individual capacities for lack of standing; we affirm the settlement and judgment of the trial court with respect to Linda in her capacity as coadministrator, thereby rendering Northwestern's cross-appeal moot; and we affirm the trial court's one-third fee award to Cochran.

Appeal dismissed as to Linda, George III and Hershel individually; appeal affirmed as to Linda as coadministrator; cross-appeal of Northwestern mooted and not considered; appeal affirmed as to Cochran.

TULLY and GALLAGHER, JJ., concur.