2022 IL App (5th) 210350-U

NO. 5-21-0350

NOTICE
Decision filed 09/16/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| MILLERKING, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 19-MR-817 |
| | ) | |
| JAMES W. ACKERMAN and ACKERMAN | ) | |
| LAW OFFICE, P.C., | ) | Honorable |
| | ) | Ronald J. Foster Jr., |
| Defendants-Appellants. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Presiding Justice Boie and Justice Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The order of the circuit court of Madison County awarding attorney fees to the appellant in the amount of $11,450 is affirmed where the court's determination of the *quantum meruit* amount owed for services rendered was not an abuse of discretion.

¶ 2    This appeal arises from an order of the circuit court of Madison County awarding attorney fees in the amount of $11,450 to the appellant, James W. Ackerman, in compensation for work he did on a contingency basis prior to being discharged in a personal injury case. For the reasons that follow, we affirm.

¶ 3                                 I. BACKGROUND

¶ 4    On July 26, 2017, Laurie Edens was involved in an accident resulting in injuries that led to her filing personal injury claims against Denton Transportation and its employee. Edens retained

1

Ackerman on a contingency fee basis to represent her in said claims. Due to her dissatisfaction with Ackerman's representation, she discharged him as counsel and terminated the contingent fee contract with his firm on June 4, 2018. However, Ackerman maintained that despite the termination of the contract, there was a lien in accordance with the Attorneys Lien Act (770 ILCS 5/0.01 *et seq*. (West 2018)).

¶ 5    On June 26, 2018, Edens retained the MillerKing law firm to represent her in her personal injury claims. She entered into a contingent fee contract with MillerKing. MillerKing, in conjunction with Whiting Law Offices (Whiting), successfully resolved the Edens's claims via settlement. In so representing Edens, MillerKing gathered medical records, conducted presuit investigations, and engaged in substantial effort toward prosecuting her claims, including retaining experts to consult and testify at trial.

¶ 6    On June 20, 2019, MillerKing filed a complaint for declaratory relief against Ackerman, asking that the trial court declare the rights and responsibilities of the parties—MillerKing and Ackerman—to the settlement proceeds and that any recovery by Ackerman be in accordance with a claim for *quantum meruit*.

¶ 7    On August 7, 2019, Ackerman filed a motion to compel seeking copies of any and all correspondence, documents concerning presuit investigation or prosecution of the claim; any and all correspondence to experts; any and all timeslips, records, or computations of time kept by MillerKing; any and all documents, memoranda, notes, or any item which would explain efforts by MillerKing to get the case resolved; any pleadings filed by MillerKing; any and all settlement discussions and settlement documents associated with the claim; and any and all records concerning costs or fees of MillerKing associated with the claim. The trial court granted the motion in part and ordered MillerKing to provide the amount of the settlement, the client contract,

copies of the pleadings filed in the tort case, and the date of the settlement. The court denied the other portions of the motion.

¶ 8    On September 30, 2021, the trial court held a hearing on the issue of attorney fees. The court began by summarizing the proceedings that occurred prior to the court reporter being present. The court noted that Ackerman testified that he had practiced law since 1986, and he primarily handled injury claims. He was retained by Edens after she was struck by a tractor-trailer. He and Edens had a contingent fee contract wherein his fee would be one-third of any damages awarded if no suit was filed, 40% if a suit was filed, and 50% if an appeal was filed. The contract was signed by Edens the day after the accident occurred.

¶ 9    On June 4, 2018, Ackerman was discharged by Edens via letter. Ackerman testified that no lawsuit was ever filed by him, and he did not engage in any negotiations with the defendant's insurance company. He explained that, during his representation of Edens, she was continuously receiving treatment for her injuries caused by the accident, and he advised her to wait to make any demand until after her treatment was complete because she could continue to accrue medical bills. He recalled that this strategy upset Edens and he believed that was the reason behind her terminating the contract. He acknowledged that, upon termination of the contract, he was no longer entitled to one-third of the settlement amount. He also acknowledged that he did not have a fee sharing agreement with MillerKing. He believed and asserted that an hourly calculation of his fee would not be appropriate as both he and MillerKing handled the case for one year, he spent as many hours working on the case as MillerKing and Whiting, and he spent a lot of time dealing with both Edens and other third parties. He asserted that he spent a total of 22.9 hours working on her case. He recalled that he had advised Edens to seek restitution through the criminal proceedings arising from the accident as he was aware that she was having financial difficulties.

3

He advised her that if she cooperated in the traffic case, the state's attorney might help her in seeking a judgment of restitution. However, she received no such restitution as a result of those proceedings.

¶ 10 Ackerman argued that Edens's case was unusual due to the fee resulting from the settlement amount. However, he did not know what amount of that fee was paid to MillerKing as the firm outsourced the case to a Chicago firm, and the trial court denied his discovery requests for MillerKing's financial records. He opined that he was owed $27,000 as a fair fee for his contributions based on the amount of the settlement.

¶ 11 On cross-examination, Ackerman stated that he had handled approximately 50 jury trials throughout the course of his career. At one point, he held the record in Christian County for an award of damages in an injury case. He also taught seminars on how to handle injury cases and served on the Illinois State Bar Association's Tort Committee. He also identified a letter he received from MillerKing wherein the firm suggested that $500 would be an appropriate hourly rate to pay him for the hours he worked on the case prior to its representation. He also acknowledged that in the letter he received from Edens terminating his representation, Edens wrote that she felt no progress had been made in the case during the 10 months he had represented her. His records indicated that, during the time he represented Edens, he was in contact with her at least 55 times.

¶ 12 After hearing the testimony, the trial court used an hourly calculation in determining the appropriate fee for Ackerman's work on the case prior to being discharged by Edens. The court awarded Ackerman $11,450 in attorney fees and $279.32 in costs. He now appeals.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, Ackerman argues that the trial court erred in basing its award of attorney fees on an hourly basis and not on a percentage of the attorney fees awarded to MillerKing after settlement of the personal injury action. He also asserts that the court erred in denying portions of his motion to compel and in sustaining an objection regarding the amount of the fee MillerKing received from Edens's settlement.

¶ 15    A trial court has broad discretionary powers in awarding attorney fees and its decision will not be reversed absent an abuse of discretion. *In re Estate of Callahan*, 144 Ill. 2d 32, 43-44 (1991). An abuse of discretion exists where the court's decision is arbitrary or fanciful, or where no reasonable person would agree with the court's position. *Pate v. Wiseman*, 2019 IL App (1st) 190449, ¶ 28.

¶ 16    A client may discharge her attorney at any time, with or without cause. *Callahan*, 144 Ill. 2d at 37. When a client terminates an attorney working under a contingency-fee contract, the contract ceases to exist and the contingency term, regardless of whether the client prevails, is no longer operative. *Id.* at 40; *Will v. Northwestern University*, 378 Ill. App. 3d 280, 303-04 (2007). The former client is liable to the terminated attorney for the reasonable value of the services received during the attorney's period of employment. *Callahan*, 144 Ill. 2d at 41. A discharged attorney is entitled to be paid a reasonable fee on a *quantum meruit* basis for those services rendered prior to discharge. *Id.*; *Will*, 378 Ill. App. 3d at 304. Under this theory, a trial court literally awards the attorney " 'as much as he deserves.' " *First National Bank of Springfield v. Malpractice Research, Inc.*, 179 Ill. 2d 353, 365 (1997) (quoting *Romanek–Golub & Co. v. Anvan Hotel Corp.*, 168 Ill. App. 3d 1031, 1041 (1988)). *Quantum meruit* is based on the implied promise of a recipient of services to pay for those services that are of value to him because

5

otherwise the recipient would be unjustly enriched. *Callahan*, 144 Ill. 2d at 40. An attorney's action for attorney fees, based on a *quantum meruit* theory, accrues immediately after discharge. *Id.* at 38-39.

¶ 17    In determining a reasonable attorney fee under the doctrine of *quantum meruit*, the trial court should assess several factors, including: (1) the time and labor required, (2) the attorney's skill and standing, (3) the nature of the cause and the novelty and difficulty of the subject matter, (4) the attorney's degree of responsibility in managing the cause, (5) the usual and customary charge in the community, and (6) the benefits resulting to the client. *Will*, 378 Ill. App. 3d at 304.

¶ 18    Trial courts have broad discretion in matters of attorney fees because of the advantages of close observation of the attorney's work and a deeper understanding of the skill and time required in the case. *Id.* "The party seeking attorney fees bears the burden of presenting sufficient evidence from which the trial court can render a decision as to their reasonableness." *Weidner v. Szostek*, 245 Ill. App. 3d 487, 493 (1993).

¶ 19    Here, Ackerman's argument is based on a mathematical calculation of the percentage of the contingency fee that he received in comparison to the amount of the settlement. He claims that the work product he contributed to the case was worth more than the amount awarded by the trial court. However, the record indicates otherwise. Ackerman's argument that he performed the majority of the work on Edens's case is unpersuasive where he was on the case for approximately the same amount of time as MillerKing and Whiting; Edens's settlement was negotiated by MillerKing and Whiting; and Ackerman informed Edens outright that he did not want to make any kind of demand until after her medical treatments were complete, which eventually led to her discharging him.

6

¶ 20    Ackerman asserts that the trial court's award was not reasonable in light of the total settlement amount.  However, there is ample case law demonstrating that a court may award attorney fees based on a calculation of an hourly rate.  Although Ackerman submitted an accounting totaling 11.5 hours of work on Edens's case, he testified that he performed at least 22.9 hours of work on the case.  The court multiplied the number of hours reported by Ackerman—22.9—by the hourly fee suggested by MillerKing—$500—totaling $11,450.  The record establishes that the court used both the higher fee amount and the additional hours reported by Ackerman during the hearing in calculating its award.

¶ 21    This case does not present a situation where counsel was discharged immediately before a settlement was agreed to and after all the substantial work in negotiating the settlement had been completed.  Instead, here, Ackerman was discharged by Edens almost one year before a settlement was reached, and her reason for discharge was specifically that she was unhappy with the lack of progress on her case when he was representing her.  Therefore, we cannot say that the trial court's award of attorney fees based on its calculation of a reasonable hourly rate was an abuse of discretion.

¶ 22    As to whether the trial court erred in sustaining counsel's objection regarding the amount actually paid to MillerKing, the caselaw establishes that the court did not err in ruling that MillerKing's fee was not relevant to Ackerman's claim.  The amount paid to subsequent counsel is not one of the factors courts consider under the doctrine of *quantum meruit*.  *Will*, 378 Ill. App. 3d at 304.  Instead, the court looks to the actions of the party seeking recovery.  *Id.*  Because the fee paid to MillerKing would have no bearing on the court's determination of the reasonable amount owed to Ackerman, it did not err in sustaining the objection regarding MillerKing's portion of the contingency fee.

¶ 23    Lastly, we likewise find that the trial court did not abuse its discretion in denying Ackerman's motion to compel in part where the information sought by him was not relevant to his claim for attorney fees.  Again, the amount MillerKing collected from the contingency fee under the contract is not a consideration in a *quantum meruit* analysis.

¶ 24    The record demonstrates that the trial court considered all relevant factors in calculating the reasonable fee owed to Ackerman.  Therefore, it did not abuse its discretion in awarding him $11,450 in attorney fees and $279.32 in costs.

¶ 25                                    III. CONCLUSION

¶ 26    For the foregoing reasons, the order of the circuit court of Madison County is hereby affirmed.

¶ 27    Affirmed.